233 P.3d 848 (2010)
168 Wash.2d 936
STATE of Washington, Respondent,
v.
James Robert NASON, Petitioner.
No. 82333-2.
Supreme Court of Washington, En Banc.
Argued March 9, 2010.
Decided June 10, 2010.
Susan Marie Gasch, Gasch Law Office, Spokane, WA, for Petitioner.
Mark Erik Lindsey, Spokane County Prosecutor's Office, Spokane, WA, for Respondent.
Sarah A. Dunne, Nancy Lynn Talner, ACLU of Washington Foundation, Lila Jane Silverstein, Washington Appellate Project, Seattle, WA, amicus counsel for American Civil Liberties Union of Washington & Washington Association of Criminal Defense Lawyers.
Breean Lawrence Beggs, Paukert & Troppmann, P.L.L.C., Spokane, WA, amicus counsel for Center for Justice.
Travis Stearns, Washington Defender Association, Seattle, WA, amicus counsel for Washington Defender Association.
FAIRHURST, J.
¶ 1 James Robert Nason challenges an order imposing sanctions for his failure to meet the requirements of his sentence. Specifically, Nason failed to pay his legal financial obligation (LFO), failed to provide a proper address, failed to report as directed, and failed to turn himself into jail to serve a 60 day sentence. Nason's challenge to the order centers primarily on a provision[1] that *849 has been colloquially referred to as an "auto-jail"[2] provision. The provision reads:
The defendant shall pay $30 or more monthly, effective 8-1-07. The case is to be reviewed 10/31/07 for compliance. If the defendant has not complied with the payment schedule, nor filed a motion with the court for a stay by the review date, the defendant is to report to jail on 11/14/07 by 4:00 p.m. to serve 60 days in jail.
Clerk's Papers (CP) at 109. Nason argues that this provision violates due process because it provides an avenue to incarceration without a hearing. Nason alternatively argues that this provision constitutes a suspended sentence in violation of RCW 9.94A.575. Nason also asserts that the county is required by statute to credit against his LFO any jail time he serves for failing to pay the LFO.[3]

I. FACTUAL AND PROCEDURAL HISTORY
¶ 2 In July 1999, then 18 year old Nason pleaded guilty to one count of second degree burglary for helping a friend "take a couple of bags out of [a] storage shed." CP at 8. Nason was sentenced to 30 days in jail with 16 days credited for time served and 14 days converted into 112 hours of community service. He was also ordered to pay $735, which consisted of a victim assessment of $500, court costs of $110, and court appointed attorney fees of $125.
¶ 3 In February 2000, Nason was sanctioned for failing to report for the months of October, November, and December 1999; failing to perform his community service; and failing to make payments toward his LFO. He entered into a stipulated agreement adjusting his payment schedule to $45 per month, adjusting his reporting requirements, and altering his community service schedule.
¶ 4 In October 2000, Nason's community corrections officer (CCO) reported that Nason had made only two payments totaling $90. The CCO also reported that Nason had been terminated from his community service work crew and was failing to report to the CCO as required by the stipulated agreement. Based on this report, a hearing was scheduled to determine if the failures were willful. Nason failed to appear at the hearing. Consequently, an arrest warrant was issued and Nason was taken into custody.
¶ 5 The trial court found that Nason had willfully violated the conditions of his judgment and sentence and stipulated agreement. The trial court ordered Nason to serve 95 days in jail. Five of the days in jail represented a conversion of the remaining 40 hours of community service Nason had not performed. Having completed all nonfinancial requirements of supervision, the Department of Corrections (DOC) terminated its supervision of Nason on July 11, 2002.
¶ 6 The clerk of the superior court took over collection duties for Nason's LFO and sent Nason collection notices in 2003 and 2004. CP at 36-37. By July 2005, Nason had not made any further payments beyond the $90 he had paid in 2000. The clerk issued a violation report, and a hearing was set for September 2005. Nason failed to appear at the hearing, an arrest warrant was issued, and Nason was arrested. Nason signed an order agreeing to serve 30 days in jail and to report to the county clerk's office within 48 hours of his release. Nason served the 30 days but failed to report to the county *850 clerk's office after release. A hearing was scheduled for June 2006, but Nason failed to appear, and an arrest warrant was issued.
¶ 7 On June 30, 2006, Nason was arrested. At a hearing, Nason asserted that he was homeless, unemployed, and could not pay his LFO. However, the trial court determined that Nason was willful in failing to report as directed, in failing to pay his financial obligations, in failing to complete a financial assessment form, and in failing to provide a valid address. In July 2006, the court ordered Nason to serve 60 days in jail. Additionally, the order included an auto-jail provision that read:
The defendant shall pay $25 or more monthly, effective 8/15/06. The case is to be reviewed 1/10/07 for compliance. If the defendant has not complied with the payment schedule, nor filed a motion with the court for a stay by the review date, the defendant is to report to jail on 1/17/07 by 4:00 p.m. to serve 60 days in jail.
CP at 52.
¶ 8 On January 26, 2007, a court collection deputy determined that Nason had not made the payments required by the July 2006 order. The deputy also noted that Nason had not filed a stay with the court and, therefore, was required to turn himself in to the county jail to begin serving his 60 day sentence. The deputy recognized that Nason was in further violation because he had failed to turn himself in.
¶ 9 A bench warrant was issued, and Nason was arrested. Nason stipulated to the violations and agreed to a 120 day jail sanction, but he contested two issues. First, Nason argued that the auto-jail provision violated procedural due process because it provided an avenue to incarceration without a hearing. Second, Nason argued that he should receive credit against his LFO for time served. The trial court rejected both of Nason's arguments, finding that the ability to request a stay satisfied due process and that there was no authority for the proposition that Nason should receive credit against his LFO from serving time in jail. In April 2007, the court modified Nason's sentence to impose 120 days in jail based on Nason's failure to report as directed, his failure to pay his LFO, his failure to provide a valid address, and his failure to check into jail pursuant to the July 2006 auto-jail provision. The 120 day total was derived by imposing 30 days for each of the violations. The order included another auto-jail provision.
¶ 10 Nason appealed the July 2006 and April 2007 orders on four grounds. First, he argued that the auto-jail provision was effectively a suspended sentence in violation of RCW 9.94A.575. Second, he argued that the auto-jail provision violated due process. Third, he argued that jail time should have counted against his LFO. Finally, he argued that the county clerk exceeded its statutory authority by engaging in stipulated agreements.
¶ 11 The Court of Appeals found that the auto-jail provision did not constitute a suspended sentence. State v. Nason, 146 Wash. App. 744, 753-54, 192 P.3d 386 (2008). Additionally, it concluded that the provision did not violate due process because a jail term was not imposed until after a hearing was held to determine the willfulness of Nason's noncompliance. Id. at 756, 192 P.3d 386. The court found no requirement that jail time should be credited against LFOs. Id. at 758, 192 P.3d 386. Finally, the court found that Nason had failed to preserve his argument that the county clerk exceeded its authority. Id. at 759, 192 P.3d 386. Consequently, the Court of Appeals affirmed the trial court's order. Id. We granted Nason's petition for review. State v. Nason, 165 Wash.2d 1041, 205 P.3d 132 (2009).

II. ISSUES
A. Is the auto-jail provision invalid either because it violates due process or because it comprises a suspended sentence?
B. Should Nason's time served in jail be credited against his LFO?

III. ARGUMENT

A. The auto-jail provision is invalid because it violates due process
¶ 12 Auto-jail provisions appear on Spokane County's LFO agreement forms and *851 include spaces for entry of a monthly payment amount, a review date, a date to report to jail to serve a sentence, and the length of the jail sentence. On the review date, a court collection deputy reviews the offender's case to determine if the offender is current with his or her monthly payments and to ascertain whether the defendant has filed a stay. If the offender is not current with his or her payments and has not filed a stay, the offender must report to jail on the report date to serve the predetermined jail sentence. If the offender is not current with his or her payments but has filed a stay, the offender will receive a hearing where he or she may argue that the jail sentence should not be imposed.
¶ 13 Nason argues that auto-jail provisions violate due process because they provide an avenue to incarceration without first requiring the State to inquire into the offender's ability to pay and without a predeprivation hearing. The State argues that because the defendant may seek a stay, and consequently a hearing prior to incarceration, the scheme is consistent with due process.
¶ 14 RCW 9.94A.760 governs LFOs, and, with regard to penalties for noncompliance, directs us to RCW 9.94B.040.[4] RCW 9.94A.760(10). Under RCW 9.94B.040, there are two ways to impose sanctions after a violation of a sentence condition. First, the offender and DOC may enter into a stipulated agreement in which DOC may impose sanctions. RCW 9.94B.040(3)(a)(i). The agreement must be submitted to a court for review, and the court is empowered to modify the agreement. RCW 9.94B.040(3)(a)(ii). Second, if there is no stipulated agreement, or if the court is unsatisfied with the agreement, the court "shall require the offender to show cause why the offender should not be punished for the noncompliance." RCW 9.94B.040(3)(b). The burden is on the State to show by a preponderance of the evidence that the offender has violated the conditions or requirements of his or her sentence. RCW 9.94B.040(3)(c). If the State carries its burden, the court may, among other things, impose up to 60 days of confinement per violation. Id. The statute treats both the stipulated agreements and a court's order to serve jail time as modifications of the original judgment and sentence. RCW 9.94B.040(1).
¶ 15 Due process precludes the jailing of an offender for failure to pay a fine if the offender's failure to pay was due to his or her indigence. Smith v. Whatcom County Dist. Court, 147 Wash.2d 98, 111, 52 P.3d 485 (2002) (citing Bearden v. Georgia, 461 U.S. 660, 672-73, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983)). However, if an offender is capable of paying but willfully refuses to pay, or if an offender does not "make sufficient bona fide efforts to seek employment or borrow money in order to pay," the State may imprison the offender for failing to pay his or her LFO. Bearden, 461 U.S. at 668, 103 S.Ct. 2064. The burden is on the offender to show that his nonpayment is not willful. RCW 9.94B.040(3)(b); Smith, 147 Wash.2d at 112, 52 P.3d 485. Although the offender carries the burden, due process still imposes a duty on the court to inquire into the offender's ability to pay. Smith, 147 Wash.2d at 112, 52 P.3d 485. Inquiry into the offender's ability to pay comes at "the point of collection and when sanctions are sought for nonpayment." State v. Blank, 131 Wash.2d 230, 242, 930 P.2d 1213 (1997).
¶ 16 Under the terms of the auto-jail provision imposed in July 2006, Nason had to pay $25 per month toward his LFO starting on August 15, 2006. A review date was set for January 10, 2007, when a court collection deputy would determine if Nason was current with his monthly payments. Nason did not make his payments and did not seek a stay. Therefore, under the auto-jail provision imposed in July 2006, Nason was supposed to report to jail to serve a 60 day sentence. Because due process requires the court to inquire into Nason's reason for nonpayment, and because the inquiry must come at the time of the collection action or sanction, ordering Nason to report to jail without a contemporaneous inquiry into his ability to *852 pay violated due process. See Smith, 147 Wash.2d at 112, 52 P.3d 485; Blank, 131 Wash.2d at 242, 930 P.2d 1213. Because it violated due process, the portion of the auto-jail provision ordering Nason to report to jail and serve 60 days was void.
¶ 17 The Court of Appeals concluded that due process was not violated in this case because Nason, in fact, received a hearing prior to being incarcerated. Nason, 146 Wash.App. at 756, 192 P.3d 386. It is true that before the July 2006 and April 2007 orders, Nason received a hearing in court. However, the April 2007 order required Nason to serve 120 days in jail, 30 of which were imposed as a sanction for his failure to report to jail pursuant to the auto-jail provision in the July 2006 order. Because the portion of the auto-jail provision that ordered Nason to report to jail and serve 60 days was void for want of due process, the trial court erred when it sanctioned Nason for failing to report. Consequently, Nason is entitled to a remand for resentencing.
¶ 18 Because we conclude that the portion of the auto-jail provision that purported to sentence Nason to jail for 60 days is void, we need not determine whether the same provision constitutes a suspended sentence.

B. The county is not required to credit Nason's LFO for Nason's time spent in jail
¶ 19 Nason asserts that the jail sentence imposed for nonpayment of his LFO should be credited against the balance of his LFO. To reach this conclusion, Nason relies on RCW 10.01.180.[5] He argues that RCW 9.94A.760 must be read in light of RCW 10.01.180. Because RCW 10.01.180 calls for crediting time served against an LFO, Nason asserts that the time he served must be credited against his LFO. However, a review of RCW 9.94A.760 and RCW 10.01.180 reveals that they should not be read together.
¶ 20 With regard to imposing sanctions for nonpayment of LFOs, RCW 9.94A.760 directs us to RCW 9.94B.040. The sanctions levied under RCW 9.94B.040 are explicitly referred to as modifications of the original judgment and sentence. RCW 9.94B.040(1). Modifications are similar to probation revocation, which we have recognized "`should be deemed punishment for the original crime.'" State v. Watson, 160 Wash.2d 1, 8-9, 154 P.3d 909 (2007) (quoting State v. Prado, 86 Wash.App. 573, 578, 937 P.2d 636 (1997)). The Court of Appeals in Prado recognized that the predecessor statute to RCW 9.94B.040 "intend[ed] the violation of the condition to relate to the original prosecution, rather than constitute a new prosecution." 86 Wash.App. at 577, 937 P.2d 636. Therefore, sanctions imposed under RCW 9.94B.040 are criminal sanctions added to the original sentence.
¶ 21 In contrast, RCW 10.01.180 is explicitly couched in terms of contempt. RCW 10.01.180(1), (3). We have recognized that "[t]he contempt proceeding authorized by RCW 10.01.180 is civil." Smith, 147 Wash.2d at 105, 52 P.3d 485. We have also recognized that under RCW 10.01.180 "[t]he jail time imposed for nonpayment is not part of the sentence." Id. at 110, 52 P.3d 485. RCW 10.01.180 describes a civil method of enforcing payment that is separate from the sentence modification described in RCW 9.94B.040. Accordingly, RCW 10.01.180 does not apply in this case,[6] and Nason need not *853 receive credit against his LFO for time served.

IV. CONCLUSION
¶ 22 Before sanctions are imposed on an offender for failure to pay an LFO, a trial court must inquire into the offender's ability to pay. Smith, 147 Wash.2d at 112, 52 P.3d 485. That inquiry must be at the "the point of collection and when sanctions are sought for nonpayment." Blank, 131 Wash.2d at 242, 930 P.2d 1213. To the extent that an auto-jail provision calls for incarceration without a contemporaneous inquiry into the offender's ability to pay, it is void. Because the trial court in this case sentenced Nason to 30 days in jail for failure to report to jail under the auto-jail provision, Nason needs to be resentenced. Accordingly, we reverse the Court of Appeals with respect to the auto-jail issue and remand for resentencing.
WE CONCUR: BARBARA A. MADSEN, Chief Justice, CHARLES W. JOHNSON, GERRY L. ALEXANDER, RICHARD B. SANDERS, TOM CHAMBERS, SUSAN OWENS, JAMES M. JOHNSON, and DEBRA L. STEPHENS, Justices.
NOTES
[1] Nason's arguments also address a nearly identical provision contained in a previous order.
[2] There has been some argument over the appropriateness of the term "auto-jail." The use of that term in this case appears to have arisen in an entry in the Superior Court Management Information System referring to a court collection deputy's determination that Nason had failed to pay his LFO or report to jail. Because the term provides a convenient shorthand for referencing the provisions at issue, we use the term in this opinion.
[3] Nason presents an interesting argument that the county clerk has exceeded its authority by engaging in stipulated agreements with offenders. However, we agree with the Court of Appeals that Nason has failed to preserve this issue on appeal because he did not argue it below. Additionally, Nason has not appealed from an order resulting from such a stipulated agreement. Accordingly, the issue is not properly before us. Nason also argues that the clerk's role in collecting LFOs violates the separation of powers doctrine. Nason raised this argument for the first time in supplemental briefing, and we decline to address it. See Sorenson v. Pyeatt, 158 Wash.2d 523, 542-43, 146 P.3d 1172 (2006).
[4] Both parties in this case cited in their briefing to statutes in force at the time Nason appealed. While the case was on appeal, the legislature recodified former RCW 9.94A.634 (2002) as RCW 9.94B.040. Laws of 2008, ch. 231, § 56. As the recodification did not substantively affect the statute, we refer to the current version for the sake of convenience.
[5] The pertinent provisions of RCW 10.01.180 read as follows:

(1) A defendant sentenced to pay a fine or costs who defaults in the payment thereof or of any installment is in contempt of court as provided in chapter 7.21 RCW. The court may issue a warrant of arrest for his or her appearance.
....
(3) If a term of imprisonment for contempt for nonpayment of a fine or costs is ordered, the term of imprisonment shall be set forth in the commitment order, and shall not exceed one day for each twenty-five dollars of the fine or costs, thirty days if the fine or assessment of costs was imposed upon conviction of a violation or misdemeanor, or one year in any other case, whichever is the shorter period. A person committed for nonpayment of a fine or costs shall be given credit toward payment for each day of imprisonment at the rate specified in the commitment order.
[6] Nason cites RCW 10.82.030 and .040 for the proposition that the county must set an amount to credit offenders per day and must provide offenders with an opportunity to work off non-payment by labor. We have read RCW 10.82.030 and .040 in unison with RCW 10.01.180 to apply to civil confinement for nonpayment of fines and costs. See Smith, 147 Wash.2d at 104-06, 52 P.3d 485. Therefore, those statutes are also inapplicable here, where Nason's sanction is criminal and was imposed as a modification of his original sentence.