[Nos. 39912-1-II; 40549-1-II.   Division Two.   January 4, 2012.]

THE STATE OF WASHINGTON, *Respondent*, v. JAMES MICHAEL
STONE, *Appellant*.

*Thomas E. Weaver Jr.*, for appellant.

*Scott W. Rosekrans, Prosecuting Attorney*, and *Thomas A. Brotherton, Deputy*, for respondent.

¶1 VAN DEREN, J. — James Stone appeals from the trial court's March 23 and October 2, 2009, orders imposing jail time because he failed to make payments on his legal financial obligations (LFOs). He argues that (1) the Jefferson County Superior Court policy of placing defendants who owe LFOs as a result of a criminal sentence on a pay-or-appear calendar and requiring them to defend themselves without appointment of counsel violates fundamental due process, (2) the trial court denied him his right to counsel at the March 23 show cause hearing, (3) the trial court erred in admitting the pay-or-appear program coordinator's unsworn testimony at the March 23 hearing, (4) the trial court erred in its March 23 order by imposing jail time without finding that his failure to pay was willful, and (5) the trial court erred at the October 2 hearing in finding that his failure to pay was willful. The State argues on appeal that the enforcement procedure was governed by chapter 7.21 RCW and RCW 10.01.180(1), the civil contempt statutes, instead of RCW 9.94B.040(1).

¶2 We hold that enforcement proceedings for LFO payment obligations arising from criminal sentences, which may result in incarceration, triggered a fundamental due process right to appointed counsel denied Stone at the March 23 hearing. We also hold that the trial court violated Stone's due process rights by imposing jail time without inquiring at the March 23 hearing into Stone's ability to pay and without making a finding at the October 2 hearing of his willful failure to pay. We reverse and vacate the March 23 and October 2 orders and remand for further proceedings consistent with this opinion.

## FACTS

¶3 In 2001, Stone pleaded guilty to unlawful possession of a controlled substance, to-wit: methamphetamine, and second degree theft. On September 28, 2001, the trial court sentenced him to 105 days in jail and 12 months of community custody and imposed a $2,860 LFO.

¶4 On October 29, 2003, the State of Washington Department of Corrections (DOC) sent the trial court notice that Stone did "not meet the criteria for continued supervision by [DOC]," so it was closing its supervision interest in his case. Clerk's Papers (CP) at 26. The notice stated that DOC would cease sending billing statements to Stone and would forward his contact information to the Jefferson County Superior Court clerk's office "for purposes of billing, monitoring, and collection of [LFOs] and Restitution." CP at 27. According to DOC, Stone's last payment was on October 2, 2003, and to date he had paid $290.00 on his LFOs. After application of his payments, he still owed $3,179.81, including $110.00 court costs, $500.00 crime victim compensation,[1] $200.00 attorney fees, $2,000.00 "[o]ther" costs, and $659.81 interest. CP at 27 (boldface omitted).

¶5 On December 8, 2003, without counsel being appointed for him, Stone signed an "Order Placing Defendant on Jefferson County Pay or Appear Program." CP at 29 (some capitalization omitted). The order set Stone's minimum monthly LFO payments at $25.00 per month and provided in part:

> Payment is due by the last business day of each month. If payment is not made by that day, Defendant must appear in Court the second Friday of the following month . . . or call the court clerk's office . . . prior to that Friday. If Defendant has not made the minimum payments in the preceding calendar month and does not appear on the second Friday of the following month at the Pay or Appear calendar, a warrant will be issued for Defendant's arrest.

CP at 29 (boldface omitted).

¶6 The trial court docket reflects that for 29 consecutive months, Stone made his monthly payments and the trial court struck the scheduled hearings. On June 9, 2006, the trial court held a hearing at which Stone did not appear.

---

[1] This was separate from restitution, which the notice indicated Stone did not owe.

The record reflects that the pay-or-appear program coordinator testified, without being sworn under oath, that Stone's last payment was made in April 2006. The trial court issued a warrant for his arrest.

¶7 The trial court docket also shows that Stone resumed making LFO payments in June 2007, and the trial court resumed striking the hearings. But Stone remained in warrant status due to his failure to appear on June 9, 2006. On December 26, 2007, the pay-or-appear coordinator sent him a letter informing him that he was on warrant status and she enclosed an order quashing his warrant, which he was to sign and return.

¶8 In Stone's absence, on January 3, 2008, the trial court entered another order re pay or appear. The order set Stone's minimum monthly LFO payment at $25, quashed his warrant, and set a date for his next hearing. This order also stated, "If payments have been made defendant need not appear for review hearing. *If defendant is not in compliance the Court may either convert LFOs to jail time or turn LFOs over to collection agency.*" CP at 33 (emphasis added).

¶9 Throughout the remainder of the year, Stone made no payments and failed to appear for hearings on several occasions. Twice, the trial court issued bench warrants for his arrest. Each time, the trial court entered an order substantially similar to the January 3, 2008, order re pay or appear. After his arrest on the second warrant, Stone appeared in custody, without counsel and without being advised of a right to counsel for the hearing, and the trial court stated, "[I]f you appear by phone just call in and talk to [the pay-or-appear coordinator]. You can avoid all this stuff. I don't expect you to come all the way over from Spokane, but, let us know."[2] Report of Proceedings (RP) at

---

[2] At argument during a later hearing on October 2, 2009, the trial court agreed with defense counsel that it did not know whether a telephone call would have stopped the issuance of a warrant if Stone did not make payments and defense counsel was sure that it would not. At oral argument before this court, the

15. The pay-or-appear coordinator stated, "I'd like to also let Mr. Stone know that this is his third warrant. So, . . . after this one we will be asking for conversion of your (inaudible) posted jail time." RP at 15.

¶10 Stone again failed to make a payment or appear at a hearing and, on March 23, 2009, he appeared in custody without counsel on the resulting arrest warrant. A prosecuting attorney represented the State at the hearing. The record contains an acknowledgement of defendant's rights that he and an unidentified[3] person signed. The document stated, "AMONG OTHERS, the rights of a person accused of a crime include . . . [t]o be represented by a lawyer, and if [they] cannot afford to pay for a lawyer, to have one provided at public expense." CP at 46. But the document also listed inapplicable rights concerning questioning of defendants, trial rights, the right to appeal a guilty finding after trial, and rights concerning guilty pleas. The document concluded by stating, "I have read or have had read to me and I understand all of the numbered paragraphs above. I have no further questions to ask of the Court." CP at 46. The State argues that this document adequately informed Stone of his right to counsel at the LFO hearings.

¶11 The trial court did not orally advise Stone of a right to counsel or ask him whether he wished to have an attorney appointed. The pay-or-appear coordinator testified at the March 23 hearing, without being sworn under oath, that Stone had not made payments since June 2008 and requested that the trial court order him to serve 10 days in jail.

¶12 The trial court asked Stone whether there was "anything [he would] like to say." RP at 18. Stone stated that he had been evicted from his home, that he had a

_____

prosecutor also stated that he did not know that a telephone call would have stopped the issuance of a bench warrant.

[3] At oral argument before this court, neither party could identify who signed for the sheriff or prosecuting attorney or who were identified as persons who signed on behalf of the State; nor could anyone identify who gave the form to Stone to sign.

shoulder injury that might require surgery, and that he "didn't just blatantly want to blow off the Court and not make [his] payments," but there had been "a lot of things [he had] been dealing with." RP at 19. The trial court replied, "I understand you've had problems, but this is an absolute mandatory obligation you have and the only type of response that can be done is to let you understand how serious it is and that apparently requires jail time." RP at 19.

¶13 Without reference to the actual pay-or-appear order that indicated that nonpayment would result in jail time credited against the LFOs or in a collection agency action, and without counsel appointed for Stone, the trial court entered another order re pay or appear imposing 10 days in jail, but otherwise it was substantially similar to such previous orders. The trial court's order, contrary to the pay-or-appear coordinator's earlier statement that she would ask to convert the jail time as credit against his LFOs and contrary to the orders to pay or appear, did not provide that the 10 days were to be credited toward his LFO debt, nor did it provide that he could be released if he made a payment on the LFOs.[4]

¶14 Stone again failed to make a payment or appear and, on September 24, 2009, appeared in custody on an arrest warrant. The trial court continued the matter until September 25. Although the record does not reflect the trial court's asking Stone whether he desired counsel or Stone's request for such, on September 24, the trial court entered an order appointing counsel, partially at public expense.

¶15 On September 25, Stone appeared with counsel. The pay-or-appear coordinator testified, without being sworn, that Stone had last made a payment in June 2008 and had not contacted the clerk's office since March 23, 2009; and she requested the trial court impose 30 days in jail. She did

___

[4] Also, at oral argument before this court, it was uncontested that Stone has not received credit toward his LFOs for any of the 55 days in jail eventually imposed by the trial court.

not ask the court to convert any of his LFOs to jail time, thereby reducing his payment obligation by time served in jail. Defense counsel requested that the trial court "afford [Stone] some due process" and make a finding on whether his failure to pay was willful. RP at 26. The trial court set a fact finding hearing and advised Stone of his rights, including the right to counsel and the right to require the State to prove the sentence violation by a preponderance of the evidence.

¶16 On October 2, 2009, at the fact finding hearing, the pay-or-appear coordinator testified under oath at defense counsel's request. She testified that since Stone's release from jail in March, he had not made any payments, had not appeared in court, and had not contacted the clerk's office by telephone. Stone testified that he was homeless; that he was left handed and limited to 25 percent use of that hand; that the Department of Social and Health Services (DSHS) paid his medical bills; that his only source of income was monthly net payments of $339 from a "[General Assistance-Unemployable (GAU)] program . . . due to [his] disability with [his] shoulder [injury]"; and that he spent this money on shelter, cigarettes, and "a few other necessities" like food. RP at 39-40. He also testified that it cost him approximately $100 to travel to Jefferson County for court appearances. Both the pay-or-appear coordinator and the prosecutor mentioned that previously Stone had served 10 days in jail and still was not making payments.

¶17 The trial court ruled:

Okay. I am going to find Mr. Stone that your failure to pay or appear was willful. You could have made a phone call, sent a letter, [or] made some attempt to contact Superior Court here in Jefferson County. As a result of your failure to do that the County [ha]s had to issue a warrant, there's been state expense picking you up, putting you in jail, . . . all because you couldn't pick up the phone or send a letter. And, that's not right and your failure is willful and I'm imposing forty-five days in jail. If you get picked up again it'll be sixty days, and if you get picked

up again there'll be another fifteen days every time that you don't make an effort to contact this Court. Do you understand?

. . . .

Forty-five days.

RP at 43. The trial court did not make a finding or comment on Stone's income or ability to pay the LFOs. It entered another order re pay or appear, imposing 45 days in jail. The order did not grant Stone credit against his LFOs for either time he served in jail. He appeals.

## ANALYSIS

¶18 We first address the nature of Stone's LFO enforcement proceedings and whether they were civil or criminal because the parties disagree about whether Stone was entitled to counsel at the hearings. We hold that the LFO enforcement proceedings are criminal in nature and, regardless of the proceedings' nature, the State denied Stone his right to counsel at his LFO hearings, with the exception of the October 2 hearing, under this case's facts. We further hold that the trial court violated Stone's due process rights by modifying his criminal sentence and ordering him to serve jail time based on a willful failure to contact the trial court, instead of a willful failure to make his LFO payments.

### I. GOVERNING STATUTES FOR FINANCIAL OBLIGATION ENFORCEMENT

¶19 The State argues on appeal that the LFO enforcement proceedings in Jefferson County were conducted under chapter 7.21 RCW and RCW 10.01.180 because Stone signed the December 8, 2003, Order Placing Defendant on Jefferson County Pay or Appear Program. CP at 29 (some capitalization omitted). It concludes that the right to counsel does not attach because these were civil proceedings and Stone was not denied any due process right. We disagree.

A. Standard of Review

■ ■ ¶20 We review de novo the interpretation of statutes, including their application. *State v. Jacobs*, 154 Wn.2d 596, 600, 115 P.3d 281 (2005).

B. Order To Pay or Appear Conflated Civil and Criminal Statutes

¶21 Here, the State sought to compel Stone to pay his LFOs[5] by entering orders requiring his payment or appearance. The December 2003 order informed him that a bench warrant would issue if he failed to pay or appear in the future. The January 2008 order (and subsequent orders), entered in Stone's absence and without the appointment of counsel for him, stated, "If payments have been made defendant need not appear for review hearing. *If defendant is not in compliance the Court may either convert LFOs to jail time or turn LFOs over to collection agency.*" CP at 33 (emphasis added).

■ ■ ¶22 RCW 9.94A.760(10)[6] provides that "[t]he requirement that the offender pay a monthly sum towards a legal financial obligation constitutes a condition or requirement of a sentence" and refers to RCW 9.94B.040 regarding

---

[5] The two versions of RCW 9.94A.030 applicable to Stone defined a "legal financial obligation" as

a sum of money that is ordered by a superior court of the state of Washington . . . for legal financial obligations which may include restitution to the victim, statutorily imposed crime victims' compensation fees as assessed pursuant to RCW 7.68.035, court costs, county or interlocal drug funds, court-appointed attorneys' fees, and costs of defense, fines, and any other financial obligation that is assessed to the offender as a result of a felony conviction.

Former RCW 9.94A.030(28) (2009); former RCW 9.94A.030(31) (2008).

[6] Both parties cited to statutes in effect at the time Stone appealed. While the case was on appeal, the legislature amended RCW 9.94A.760. *See* SUBSTITUTE S.B. 5423, 62d Leg., Reg. Sess. (Wash. 2011); LAWS OF 2011, ch. 106, § 3. As the amendments did not substantially affect the statute, we refer to the current version for the sake of convenience.

sanctions for noncompliance.[7] (Emphasis added.) RCW 9.94B.040(1) provides, *"If an offender violates any condition or requirement of a sentence, the court may modify its order of judgment and sentence* and impose further punishment in accordance with this section." (Emphasis added.) RCW 9.94B.040(3)(a)(i) provides, *"Following the violation* . . . the department may impose sanctions such as . . . jail time." (Emphasis added.) RCW 9.94B.040(3) provides in pertinent part:

(b) . . . the court, upon the motion of the [S]tate, or upon its own motion, shall require the offender to show cause why the offender should not be punished for the noncompliance. The court may issue a summons or a warrant of arrest for the offender's appearance;

(c) The [S]tate has the burden of showing noncompliance by a preponderance of the evidence. If the court finds that the violation has occurred, it may order the offender to be confined for a period not to exceed sixty days for each violation, and may (i) convert a term of partial confinement to total confinement, (ii) convert community restitution obligation to total or partial confinement, (iii) convert monetary obligations, except restitution and the crime victim penalty assessment, to community restitution hours at the rate of the state minimum wage as established in RCW 49.46.020 for each hour of community restitution, or (iv) order one or more of the penalties authorized in (a)(i) of this subsection. Any time served in confinement awaiting a hearing on noncompliance shall be credited against any confinement order by the court;

(d) If the court finds that the violation was not willful, the court may modify its previous order regarding payment of legal financial obligations and regarding community restitution obligations.

None of the referenced statutes provides that trial courts may credit jail time imposed toward LFO payments.

---

[7] RCW 9.94A.760(10) also refers to RCW 9.94A.737 and RCW 9.94A.740, which address community custody violations. Because Stone was no longer subject to DOC supervision and, thus, was not subject to community custody, these statutes do not apply.

¶23 In contrast, RCW 10.01.180 provides civil contempt sanctions for nonpayment of fines and costs. *State v. Nason*, 168 Wn.2d 936, 947, 233 P.3d 848 (2010); *see also Smith v. Whatcom County Dist. Court*, 147 Wn.2d 98, 105, 52 P.3d 485 (2002). RCW 10.01.180(1) provides, "A defendant sentenced to pay a fine or costs who defaults in the payment thereof or of any installment is in contempt of court as provided in chapter 7.21 RCW." RCW 10.01.180(3) provides:

> If a term of imprisonment for contempt for nonpayment of a fine or costs is ordered, the term of imprisonment shall be set forth in the commitment order, and shall not exceed one day for each twenty-five dollars of the fine or costs, thirty days if the fine or assessment of costs was imposed upon conviction of a violation or misdemeanor, or one year in any other case, whichever is the shorter period. *A person committed for nonpayment of a fine or costs shall be given credit toward payment for each day of imprisonment at the rate specified in the commitment order.*

(Emphasis added.) Thus, RCW 10.01.180(3) requires the trial court to credit a defendant for time imposed for nonpayment of a fine or cost.

¶24 Accordingly, the January 2008 and subsequent pay-or-appear orders, stating that the trial court could either convert the LFOs to jail time or turn them over to a collection agency, notified Stone that the trial court would impose civil contempt sanctions under RCW 10.01.180 and not jail time as a modification of Stone's original sentence under RCW 9.94B.040. *Nason*, 168 Wn.2d at 946-47. In doing so, those orders conflated criminal sentence modifications with the civil contempt sanctions available under RCW 10.01.180. The issue was further confused when Stone appeared before the trial court on the bench warrants and the trial court imposed sanctions under RCW 9.94B.040, i.e., jail time without credit against his LFOs, even though the pay-or-appear coordinator told Stone and the court—consistent with the January 2008 and subsequent pay or appear orders—that she would request credit against his

LFOs for his time served.[8] This conflation appears to be the source of the ensuing disagreement about whether Stone had a due process right to appointed counsel.

## C. RCW 9.94B.040 Governs LFO Proceedings

¶25 Our Supreme Court, however, resolved the issue of whether RCW 10.01.180 or RCW 9.94B.040 apply in LFO proceedings in *Nason*, 168 Wn.2d at 946-47. Nason argued that the State was required to give him credit for time served under RCW 10.01.180 for his failure to pay his LFOs. *Nason*, 168 Wn.2d at 946-47. Our Supreme Court observed that "RCW 9.94A.760 governs LFOs" and rejected Nason's argument, stating:

> With regard to imposing sanctions for nonpayment of LFOs, RCW 9.94A.760 directs us to RCW 9.94B.040. The sanctions levied under RCW 9.94B.040 are explicitly referred to as modifications of the original judgment and sentence. RCW 9.94B.040(1). Modifications are similar to probation revocation, which we have recognized "should be deemed punishment for the original crime." *State v. Watson*, 160 Wn.2d 1, 8-9, 154 P.3d 909 (2007). The Court of Appeals in [*State v.* ]*Prado*[, 86 Wn. App. 573, 577, 937 P.2d 636 (1997)] recognized that the predecessor statute to RCW 9.94B.040 "intend[ed] the violation of the condition to relate to the original prosecution, rather than constitute a new prosecution." Therefore, sanctions imposed under RCW 9.94B.040 are criminal sanctions added to the original sentence.
>
> In contrast, RCW 10.01.180 is explicitly couched in terms of contempt. RCW 10.01.180(1), (3). We have recognized that "[t]he contempt proceeding authorized by RCW 10.01.180 is civil." *Smith*, 147 Wn.2d at 105. We have also recognized that under RCW 10.01.180, "[t]he jail time imposed for nonpayment

---

[8] The avoidance of confusion or conflation of civil and criminal procedures, rules, and statutes is but one of the several issues that the appointment of counsel for individuals faced with court sanctions helps achieve. Here, it is clear that the State told Stone that he would be subject to civil contempt in a matter arising from his felony conviction. But the trial court imposed criminal sanctions by modifying Stone's original sentence when it imposed 55 days of jail time without credit against his LFOs.

is not part of the sentence." [*Smith*, 147 Wn.2d] at 110. RCW 10.01.180 describes a civil method of enforcing payment that is separate from the sentence modification described in RCW 9.94B.040. Accordingly, RCW 10.01.180 does not apply in this case, and Nason need not receive credit against his LFO for time served.

*Nason*, 168 Wn.2d at 944, 947 (some alterations in original) (some citations omitted) (footnote and internal quotation marks omitted). Thus, the State's argument that Stone had no right to counsel because LFO hearings are pursuant to the civil contempt powers of the trial court under chapter 7.21 RCW and RCW 10.01.180(1), based on the December 2003 order placing defendant on Jefferson County pay-or-appear program, fails.[9]

II. RIGHT TO COUNSEL AT LFO HEARINGS

¶26 Stone argues that the Jefferson County policy of placing convicted felons on a pay-or-appear calendar and requiring them to represent themselves violates fundamental due process rights. Under Stone's circumstances, we agree.[10]

A. The Right to Counsel

■ ■ ¶27 We review a claim of denial of constitutional rights de novo. *State v. Drum*, 168 Wn.2d 23, 31, 225 P.3d 237 (2010). Our federal and state constitutions both guarantee a criminal defendant the right to effective counsel. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22. Furthermore, under certain circumstances, due process guaranties under both constitutions require appointment of defense

---

[9] Even if we were to accept the State's characterization of the enforcement hearings as falling under the civil contempt statutes, civil contempt proceedings conditionally provide the right to counsel under both the federal and the state constitutional right to counsel at public expense. *Tetro v. Tetro*, 86 Wn.2d 252, 253, 255, 544 P.2d 17 (1975).

[10] It is possible that the December 2003 order should be vacated based on the trial court's failure to provide notice to Stone of his right to counsel, but the validity of this order is not raised in this appeal.

counsel at public expense to indigent parties. *Tetro v. Tetro*, 86 Wn.2d 252, 253, 544 P.2d 17 (1975). We are guided by the purpose of counsel, ensuring the fairness of proceedings, in giving the right its meaning. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

¶28 In *Gagnon v. Scarpelli*, 411 U.S. 778, 788-90, 93 S. Ct. 1756, 36 L. Ed. 2d 656 (1973), the United States Supreme Court considered whether the right to appointed counsel for indigent defendants extended to probation and parole revocation hearings. The Court observed, " 'Parole arises after the end of the criminal prosecution, including imposition of sentence. . . . Revocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special parole restrictions.' " *Scarpelli*, 411 U.S. at 781 (alteration in original) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 480, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972)). Thus, it reasoned that parole and probation revocation proceedings do not involve "the right of an accused to counsel in a criminal prosecution, but . . . the more limited due process right of one who is a probationer or parolee only because he has been convicted of a crime." *Scarpelli*, 411 U.S. at 789. It furthered reasoned that revocation proceedings were distinguishable from the adversarial characteristics of a criminal trial, including the State's representation by a parole officer instead of a prosecutor. *Scarpelli*, 411 U.S. at 789. Accordingly, the Court concluded that "[t]he need for counsel at revocation hearings derives, not from the invariable attributes of those hearings, but rather from the peculiarities of particular cases." *Scarpelli*, 411 U.S. at 789. It held that trial courts must determine on "a case-by-case basis" whether appointment of counsel for revocation proceedings is appropriate. *Scarpelli*, 411 U.S. at 790.

¶29 As in parole and probation revocation hearings, LFO enforcement proceedings arise after criminal prosecutions, including the imposition of sentences. As *Scarpelli*

indicates, however, such proceedings are not immune from due process concerns and "fundamental fairness—the touchstone of due process"—may require appointment of counsel at public expense in certain cases. 411 U.S. at 790. Further, in Washington, RCW 9.94B.040(1) makes it clear that LFO enforcement proceedings subject the convicted felon to a modification of his original sentence—i.e., imprisonment—and trigger due process concerns.[11] *Nason*, 168 Wn.2d at 945. We turn now to whether due process required appointment of counsel at public expense at Stone's LFO enforcement hearings.

¶30 In *Tetro*, 86 Wn.2d at 252-53, our Supreme Court considered whether the right to appointed counsel for indigent individuals extended to contempt proceedings for failure to pay child support. The court stated that the right applied to circumstances involving "criminal charges punishable by loss of liberty." *Tetro*, 86 Wn.2d at 253. But, citing *Scarpelli*, it observed that "in cases where the individual's right to remain unconditionally at liberty is not at issue—such as child neglect or parole revocation hearings—the right to counsel turns on the particular nature of the proceedings and questions involved." *Tetro*, 86 Wn.2d at 254.

¶31 The *Tetro* court observed that even in civil contempt proceedings, the "proceedings ha[ve] all the trappings of criminal trials. Defendants [a]re complained against by the county prosecutor, required to appear and defend against charges of past illegal conduct, and, most importantly, faced with the possibility of imprisonment if their defenses [a]re not successful." *Tetro*, 86 Wn.2d at 254. It stated that "insofar as the right to counsel is concerned, the label put on proceedings is less important than the threat of imprison-

---

[11] We note that Stone correctly observes that CrR 7.6 establishes a procedural right to counsel at public expense for probation revocation hearings even without a case-by-case consideration of the facts and circumstances of the hearings. At a minimum, Washington provided Stone a procedural right to appointed counsel at the LFO hearings to the extent those hearings are analogous to probation revocation hearings.

ment they entail." *Tetro*, 86 Wn.2d at 254. The court further stated:

> Whatever due process requires when other types of deprivation of liberty are potentially involved, when a judicial proceeding may result in the defendant being physically incarcerated, counsel is required regardless of whether the trial is otherwise "criminal" in nature. The grim reality of a threatened jail sentence overshadows the technical distinctions between "criminal," "quasi-criminal," and "civil" violations and demands that the protection of legal advice and advocacy be given all persons faced with it.

*Tetro*, 86 Wn.2d at 254-55. Thus, the *Tetro* court held that the right to appointed counsel extended to contempt proceedings whenever they "may result in incarceration."[12] 86 Wn.2d at 255. It noted, however, that "[t]he threat of imprisonment upon which we hold the right to counsel turns

---

[12] We note that the United States Supreme Court recently considered the right to counsel under the federal constitution for indigent defendants in civil contempt proceedings. *Turner v. Rogers*, ___ U.S. ___, 131 S. Ct. 2507, 2512, 180 L. Ed. 2d 452 (2011). It reasoned that although an indigent defendant's potential loss of personal liberty "argue[d] strongly" for a right to counsel in such proceedings, other considerations, including the opposing party's lack of representation by counsel, mitigated against a categorical right to counsel. *Turner*, 131 S. Ct. at 2518-20. Thus, it held:

> [T]he Due Process Clause does not *automatically* require the provision of counsel at civil contempt proceedings to an indigent individual who is subject to a child support order, even if that individual faces incarceration[;] . . . [i]n particular, that Clause does not require the provision of counsel where the opposing parent or other custodian (to whom support funds are owed) is not represented by counsel and the State provides alternative procedural safeguards equivalent to those we have mentioned.

*Turner*, 131 S. Ct. at 2520.

But the *Turner* Court specifically stated that it was not addressing "civil contempt proceedings where the underlying child support payment is owed to the State," observing that "[t]hose proceedings more closely resemble debt-collection proceedings" where "[t]he government is likely to have counsel or some other competent representative." 131 S. Ct. at 2520.

Stone's case falls under the distinguishable circumstances identified in *Turner*. He owed LFO payments to the State, he lacked representation by counsel, and a prosecuting attorney represented the State at the hearing ordering his confinement. Regardless of the extent, if any, that *Turner* affects *Tetro* under different facts, under these facts we continue to follow *Tetro* as our Supreme Court's binding precedent.

must be immediate. The mere possibility that an order in a hearing may later serve as the predicate for a contempt adjudication is not enough to entitle an indigent party therein to free legal assistance." *Tetro*, 86 Wn.2d at 255 n.1.

¶32 Here, DOC had terminated its supervision of Stone. Thus, his liberty interest was not limited by parole, probation, or community custody requirements. Like Tetro, the State's jurisdiction over Stone depended on an order requiring him to make monetary payments. Stone's failure to comply with the ordered payments required him to appear in a proceeding, in which a prosecuting attorney represented the State, and to argue why the court should not punish him for noncompliance. Stone's lack of counsel during these proceedings created an "asymmetry of representation" because a prosecuting attorney represented the State in this adversarial proceeding. *Turner v. Rogers*, ___ U.S. ___, 131 S. Ct. 2507, 2519, 180 L. Ed. 2d 452 (2011). As the United States Supreme Court has observed, " '[T]he average defendant does not have the professional legal skill to protect himself when brought before a tribunal with power to take his life or liberty, *wherein the prosecution is presented by experienced and learned counsel.*' " *Turner*, 131 S. Ct. at 2520 (alteration in original) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 462-63, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938)).

¶33 Finally, and most importantly, Stone faced the possibility of imprisonment for an unsuccessful defense. This possibility was immediate, as RCW 9.94B.040(3)(a)(i) and RCW 9.94B.040(3)(c) allowed the trial court to impose jail time and, prior to the March 23 hearing, the pay-or-appear coordinator informed Stone that she intended to recommend jail time. Thus, we conclude that the characteristics of the LFO enforcement proceedings here were analogous to those of the civil contempt hearing in *Tetro*. Accordingly, regardless of whether we label the LFO enforcement proceedings as civil or criminal, Stone had a due process right

to appointed counsel at public expense that was abrogated by the trial court proceedings.[13]

### B. No Valid Waiver of Counsel

¶34 Stone also argues that the trial court erred by not appointing an attorney for him at the March 23, 2009, hearing. The State counters that the acknowledgement of defendant's rights document that Stone signed sufficiently informed him of his right to counsel and that he waived this right.

¶35 We review a waiver of a constitutional right de novo. *State v. Robinson*, 171 Wn.2d 292, 301, 253 P.3d 84 (2011). Waiver of a constitutional right must be "knowing, intelligent, and voluntary." *State v. Stegall*, 124 Wn.2d 719, 724, 881 P.2d 979 (1994). In order to establish waiver, the State must prove " 'an intentional relinquishment or abandonment of a known right or privilege.' " *Brewer v. Williams*, 430 U.S. 387, 404, 97 S. Ct. 1232, 51 L. Ed. 2d 424 (1977) (quoting *Johnson*, 304 U.S. at 464). The right to counsel does not depend upon a request by the defendant, and this court may not presume waiver of counsel from a silent record. *Carnley v. Cochran*, 369 U.S. 506, 513, 516, 82 S. Ct. 884, 8 L. Ed. 2d 70 (1962). We indulge in " 'every reasonable presumption against a defendant's waiver of his or her right to counsel.' " *State v. Madsen*, 168 Wn.2d 496, 504, 229 P.3d

---

[13] Stone, citing *In re Personal Restraint of Boone*, 103 Wn.2d 224, 230-31, 691 P.2d 964 (1984), argues that the trial court violated his due process rights by not giving him notice of the allegations against him before the March 23 and October 2 hearings. Even assuming that *Boone*, a probation revocation case, applies here, the multiple orders to pay or appear—predating these hearings and signed by Stone—clearly stated his payment obligations and stated that converting his LFOs to jail time or collection action could result from his noncompliance. *See* CP at 33, 43, 55 ("If defendant is not in compliance the Court may either convert LFOs to jail time or turn LFOs over to collection agency."). The trial court provided him sufficient written notice, and his claim fails. *See Smith*, 147 Wn.2d at 112-13 (civil contempt case stating, "A defendant must have notice that failure to pay a fine may be contempt of court and may result in being sent to jail"). We note, however, that the orders to pay or appear did not inform Stone that he also faced jail time without credit against his LFOs, a consequence different from conversion of his LFOs into jail time as stated in the orders. This issue is not raised in this appeal.

714 (2010) (internal quotation marks omitted) (quoting *In re Det. of Turay*, 139 Wn.2d 379, 396, 986 P.2d 790 (1999)).

¶36 Here, the document Stone signed was an amalgamation of rights applicable to various proceedings, such as a trial, many of which were likely inapplicable to the LFO enforcement hearing. Further, although it listed a right to counsel, it never expressly stated that signing the document constituted a waiver of that right. It stated only that signing the document certified that he understood the enumerated rights and "ha[d] no further questions" for the trial court.[14] CP at 46. Finally, the trial court never orally advised him of his right to counsel or engaged in a colloquy about whether he understood and waived it. Faced with a record silent on waiver, this court cannot presume that he intentionally waived his right to counsel by failing to request or question the trial court about it. *Carnley*, 369 U.S. at 513, 516.

¶37 In certain circumstances involving the right to counsel, we presume prejudice, including the " 'complete denial of counsel.' " *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 673-74, 101 P.3d 1 (2004) (internal quotation marks omitted) (quoting *Visciotti v. Woodford*, 288 F.3d 1097, 1106 (9th Cir. 2002)). Here, the trial court did not provide counsel for Stone in a proceeding to which the right applied. Thus, we reverse and vacate the trial court's March 23 order.[15]

III. LACK OF FINDING OF WILLFUL NONPAYMENT

¶38 Stone also appeals the trial court's failure to find willful nonpayment on March 23 and its finding of willfulness on October 2. We agree that due process man-

---

[14] Stone also argues that the trial court violated his rights by failing to inform him of his right to appeal. Although this issue is moot because we allowed Stone to appeal from both orders, the trial court must inform defendants orally or in writing of their right to appeal after the hearing. CrR 7.2(b).

[15] Because we vacate the March 23 order, we do not discuss Stone's claim that the trial court erred in admitting the pay-or-appear coordinator's unsworn testimony at the March 23 hearing. The State concedes this error but contends that it was harmless.

dates that the trial court address whether a failure to pay LFOs is willful before imposing sanctions and that neither order satisfied this mandate.

¶39 In *Nason*, our Supreme Court elaborated on what constitutes willful nonpayment:

> Due process precludes the jailing of an offender for failure to pay a fine if the offender's failure to pay was due to his or her indigence. However, if an offender is capable of paying but willfully refuses to pay, or if an offender does not "make sufficient bona fide efforts to seek employment or borrow money in order to pay," the State may imprison the offender for failing to pay his or her LFO. The burden is on the offender to show that his nonpayment is not willful. Although the offender carries the burden, due process still imposes a duty on the court to inquire into the offender's ability to pay. Inquiry into the offender's ability to pay comes at "the point of collection and when sanctions are sought for nonpayment."

168 Wn.2d at 945 (citations omitted) (quoting *Bearden v. Georgia*, 461 U.S. 660, 668, 103 S. Ct. 2064, 76 L. Ed. 2d 221 (1983); *State v. Blank*, 131 Wn.2d 230, 242, 930 P.2d 1213 (1997)).

¶40 Here, the trial court imposed 10 days in jail in its March 23 order without inquiring into Stone's ability to pay and without making a finding of willful nonpayment, despite Stone's testimony that he had been evicted from his home and might require shoulder surgery. The trial court stated in its ruling only that "I understand you've had problems, but this is an absolute mandatory obligation you have and the only type of response that can be done is to let you understand how serious it is and that apparently requires jail time." RP at 19. It then imposed another 45 days in jail in its October 2 order following Stone's testimony about his homelessness, the injury to his dominant hand, and the fact that DSHS was paying his medical bills and his only money came from GAU payments in the amount of $339 a month. It ruled that Stone's "failure to pay or appear was willful" because he "could have made a phone

call, sent a letter, [or] made some attempt to contact" the trial court. RP at 43.

¶41 The record does not support the trial court's orders requiring Stone's further confinement for willful nonpayment. The trial court based its March 23 order on its statement that Stone had an "absolute mandatory obligation" to make LFO payments, but it failed to inquire into Stone's ability to pay as required by due process. RP at 19. Likewise, it appears that the trial court based its October 2 order solely on Stone's failure to contact the court. It did not address his economic circumstances, his ability to work, or any other factor showing that he had willfully refused to pay money.

¶42 Thus, the trial court violated Stone's due process rights by imposing jail time in its March 23 and October 2 orders without making the required inquiries and findings. We vacate the March 23 and October 2 orders and remand the matter for further proceedings consistent with this opinion.

JOHANSON, J., concurs.

¶43 PENOYAR, C.J. (concurring in part, dissenting in part) — I completely agree with the majority's analysis of the right to counsel issue and holding that the trial court violated Stone's due process rights by imposing jail time in its March 23 order without making the required inquiries and findings. I respectfully dissent, however, from its conclusion that on October 2, 2009, the trial court improperly sentenced James Michael Stone to jail time for failing to appear or to make payments on his legal financial obligations.

¶44 The trial court found that Stone's "failure to pay or appear was willful" because he "could have made a phone call, sent a letter, [or] made some attempt to contact" the trial court. Report of Proceedings at 43. My view is that

sufficient evidence in the record supports those findings. On the payment issue, Stone had the burden to explain his lack of payment. *See Smith v. Whatcom County Dist. Court*, 147 Wn.2d 98, 112, 52 P.3d 485 (2002). The trial court heard Stone's explanation but rejected it. *See State v. Thomas*, 150 Wn.2d 821, 874, 83 P.3d 970 (2004) ("Credibility determinations are for the trier of fact and are not subject to review."). On this record of Stone's years of nonpayment, the trial court was free to find that Stone had failed to meet his burden to show that he was unable to make any payment. On the appearance issue, Stone does not contest that the trial court had the authority to sentence him for failure to appear; instead, he offers only an explanation for why he did not physically appear in Jefferson County. But the order here allowed Stone to report by phone[16] and Stone offered no reason why he could not have found a way to at least report by phone. Again, on this record, the trial court was free to find that Stone's lack of appearance was willful.

¶45 I see no error in the trial court's proceedings on October 2, 2009 and would affirm the sentence entered at that hearing.

---

[16] "If payment is not made by [the last business day of each month], Defendant must appear in Court the second Friday of the following month . . . or call the clerk's office . . . prior to that Friday." Clerk's Papers at 29.