146 P.3d 1215 (2006)
STATE of Washington, Respondent,
v.
Sonia A. ACREY, aka Sonia Arlene Robinson, aka Sonia A. Alexander, aka Cynthia L. Acrey, aka Sonia C. Hall, aka Sonia A. Phillips, Appellant.
No. 56759-4-I.
Court of Appeals of Washington, Division 1.
November 13, 2006.
*1216 Eric J. Nielsen, Nielsen Broman & Koch PLLC, Seattle, for Appellants.
David M Seaver, King County Prosecuting Attorneys Office, Seattle, for Respondents.
ELLINGTON, J.
¶ 1 Sonia Acrey drained the retirement savings of an elderly man and accumulated more than $83,000 of debt in his name. She pleaded guilty to theft, identity theft and perjury. As part of her sentence, the judge prohibited her from working as a caretaker for elderly or disabled individuals. Acrey contends the court was without authority to impose the prohibition, and that the prohibition was not crime-related and was unconstitutionally vague. We hold that RCW 9.94A.505(8) authorizes judges to impose crime-related prohibitions as part of any sentence, and that the prohibition in Acrey's sentence is neither an abuse of discretion nor unconstitutionally vague. We therefore affirm.

FACTS
¶ 2 As summer waned in 2003, a 43-year-old woman named Sonia Acrey came to visit 71-year-old Samuel Alexander at his home in a senior citizen center. She introduced herself as Sonia Robinson and claimed she knew Mr. Alexander because they had "partied together" in Canada years before. Mr. Alexander later said he did not know Acrey, but spoke to her because he did not want to *1217 hurt her feelings. She began regular visits and drove him on errands.
¶ 3 Gradually Acrey gained Mr. Alexander's trust. She repeatedly suggested that they marry. Mr. Alexander finally acquiesced in April 2004. Despite Acrey's promise that they would live together, Mr. Alexander never moved out of the senior center. Instead, after the wedding, Acrey stopped visiting Mr. Alexander and commenced transferring his assets into her name and taking out loans in his name.
¶ 4 Within four months, Mr. Alexander was penniless. Acrey withdrew more than $130,000 from Mr. Alexander's retirement accounts and incurred more than $83,000 of debt in his name, all without Mr. Alexander's knowledge or permission.
¶ 5 Acrey pled guilty to one count of first degree theft, five counts of first degree identity theft, and one count of second degree perjury. The judge imposed a standard range sentence, which did not require supervision, and added the following crime-related prohibition: "Defendant shall not work for or without pay as a caretaker for any elderly or disabled persons, except her mother." Clerk's Papers at 47.
¶ 6 The parties agree the court acted under RCW 9.94A.505(8). Acrey contends this section permits crime-related prohibitions only where explicitly authorized by other statutes, and that no such other statutes apply to her. In the alternative, she contends the prohibition is unsupported by the evidence and therefore an abuse of discretion, and is unconstitutionally vague.[1]

ANALYSIS
¶ 7 Crime-Related Prohibitions. A trial court only possesses the power to impose sentences provided by law. In re Petition of Carle, 93 Wash.2d 31, 33, 604 P.2d 1293 (1980). RCW 9.94A.505(8) authorizes crime-related prohibitions: "As a part of any sentence, the court may impose and enforce crime-related prohibitions and affirmative conditions as provided in this chapter."
¶ 8 Acrey argues that the phrase "as provided in this chapter" means that imposition of crime-related prohibitions must be authorized by some other provision of the Sentencing Reform Act (SRA), such as RCW 9.94A.650 (first-time offenders) or RCW 9.94A.720 (supervision of offenders). Because no other provision applies, she contends the court lacked the authority to impose a crime-related prohibition.
¶ 9 The State responds that the phrase "as provided in this chapter" refers to the definition of crime-related prohibitions and affirmative conditions, and does not limit the circumstances under which prohibitions may be imposed. The State contends that Acrey's reading makes the statute meaningless, because it would provide only that the court could impose conditions so long as they are authorized elsewhere. The State also points to the last antecedent rule of statutory interpretation, under which the qualifying words or phrases refer to the last antecedent (here, affirmative conditions, not crime-related prohibitions). See Boeing Co. v. State, Dep't of Licensing, 103 Wash.2d 581, 587, 693 P.2d 104 (1985).
¶ 10 No case has directly addressed whether a court must rely on a statutory provision besides RCW 9.94A.505(8) to impose crime-related prohibitions, but the State points to several cases reflecting an underlying assumption that RCW 9.94A.505(8), standing alone, authorizes judges to impose crime-related prohibitions as part of any sentence. See, e.g., State v. Warren, 134 Wash.App. 44, 70, 138 P.3d 1081 (2006); State v. Hearn, 131 Wash.App. 601, 607, 128 P.3d 139 (2006).
¶ 11 When interpreting statutes, we first attempt to effectuate the plain meaning of the words. We examine each provision in relation to others and seek a consistent construction of the whole. State v. Sommerville, 111 Wash.2d 524, 531, 760 P.2d 932 (1988). We examine sources beyond the statute and apply the rules of statutory interpretation *1218 only if the statute is ambiguous. State Dep't of Transp. v. State Employees' Ins. Bd., 97 Wash.2d 454, 458, 645 P.2d 1076 (1982).
¶ 12 We see no ambiguity in the phrase "as part of any sentence." "Any" means "one, no matter what one: EVERY . . . without restriction or limitation in choice." Webster's Third New International Dictionary 97 (3d ed.1993). RCW 9.94A.030(12) controls imposition of sentence conditions:
"Crime-related prohibition" means an order of a court prohibiting conduct that directly relates to the circumstances of the crime for which the offender has been convicted, and shall not be construed to mean orders directing an offender affirmatively to participate in rehabilitative programs or to otherwise perform affirmative conduct. However, affirmative acts necessary to monitor compliance with the order of a court may be required by the department.
As this definition makes clear, the legislature drew a sharp distinction between prohibitions on the one hand and affirmative conduct conditions on the other. Crime-related conduct may be prohibited in any sentence, so long as the prohibition is directly related to the crime.
¶ 13 Acrey points to other statutes mentioning crime-related prohibitions such as first offender and drug alternative sentencing statutes, but none supports her argument. For example, the first-time offender statute, RCW 9.94A.650(2), allows the court to impose a term of community custody
which, in addition to crime-related prohibitions, may include [affirmative conduct] requirements that the offender perform any one of more of the following:
(a) Devote time to a specific employment or occupation;
(b) Undergo available outpatient treatment for up to the period specified in subsection (3) of this section, or inpatient treatment not to exceed the standard range of confinement for that offense;
(c) Pursue a prescribed, secular course of study or vocational training.
(Emphasis added). The drug offender sentencing alternative, RCW 9.94A.660(5)(c), requires the court to impose certain prohibitions ("shall also impose . . . [c]rime-related prohibitions including a condition not to use illegal controlled substances"), but allows affirmative conduct requirements only in certain categories such as community restitution work and employment or training. RCW 9.94A.660(7)(a), (e). Neither of these statutes, nor any of the others Acrey cites, authorizes crime-related prohibitions as a separate category of sentence condition.
¶ 14 The distinction between crime-related prohibitions and affirmative conduct requirements reflects the legislature's retreat from rehabilitation in favor of determinate punishment: "`Persons may be punished for their crimes and they may be prohibited from doing things which are directly related to their crimes, but they may not be coerced into doing things which are believed will rehabilitate them.'" State v. Parramore, 53 Wash.App. 527, 530, 768 P.2d 530 (1989) (quoting DAVID BOERNER, SENTENCING IN WASHINGTON § 4.5 (1985)).
¶ 15 Cases considering crime-related prohibitions have chiefly examined the prohibition to see whether it is a disguised affirmative conduct requirement. "The main concern that arises when reviewing crime-related prohibitions is thus the prevention of coerced rehabilitation. Otherwise, the assignment of crime-related prohibitions has `traditionally been left to the discretion of the sentencing judge.'" State v. Riley, 121 Wash.2d 22, 37, 846 P.2d 1365 (1993) (quoting Parramore, 53 Wash.App. at 530, 768 P.2d 530) (emphasis added).
¶ 16 We hold that RCW 9.94A.505(8) authorizes crime-related prohibitions in every sentence.
¶ 17 Acrey also argues, however, that allowing crime-related prohibitions in any sentence does not make sense when construed with RCW 9.94A.634, which empowers the department of corrections to sanction offenders who violate conditions or requirements of their sentences. She claims that her crime-related prohibition is unenforceable because she was not sentenced to community custody *1219 and thus will not be supervised by the department of corrections.
¶ 18 The court's jurisdiction to enter and enforce its sentence does not depend upon the authority given the department of corrections. "If an offender violates any condition or requirement of a sentence, the court may modify its order of judgment and sentence and impose further punishment in accordance with this section." RCW 9.94A.634(1) (emphasis added); State v. Johnson, 54 Wash.App. 489, 491-92, 774 P.2d 526 (1989) (court's jurisdiction to sanction an offender for violating the conditions of his sentence does not expire when his period of community supervision ends). Offenders not under supervision may be less likely to be caught, but their violations are violations nonetheless.
¶ 19 Acrey contends that even if the prohibition is authorized by statute, it was unjustified because it is not directly related to her crime. Acrey argues the record does not show a pattern of preying on elderly or disabled people, or that she gained access to Mr. Alexander by serving as his caretaker, or that he was disabled.
¶ 20 Under RCW 9.94A.030(13), no causal link need be established between the prohibition imposed and the crime committed, so long as the condition relates to the circumstances of the crime. State v. Llamas-Villa, 67 Wash.App. 448, 456, 836 P.2d 239 (1992). Sentencing conditions, including crime-related prohibitions, are reviewed for abuse of discretion. State v. Riley, 121 Wash.2d 22, 36-37, 846 P.2d 1365 (1993).
¶ 21 Acrey's argument verges upon the frivolous. Acrey was not a paid caretaker. But Mr. Alexander was a 71-year-old man living in a residential center for senior citizens. His driver's license had been permanently revoked for medical reasons. Acrey herself pointed out to the sentencing court that residence staff described Mr. Alexander as "`very needy for attention, and if someone pays attention to him, he will do almost anything for them.'" Resp. Br. at 16 (quoting Acrey's presentence report at 2). As Acrey gained his trust, she served as his driver and took him various places, such as his bank, where she persuaded him to sign documents he did not understand (including applications for thousands of dollars in loans). Acrey ingratiated herself to the point that Mr. Alexander agreed to marry her  and then immediately used her status as his wife to violate his trust and steal his money.
¶ 22 Gaining the trust of a dependent person by offering services was an intrinsic part of Acrey's criminal method. Working as a caretaker for dependent persons would provide many opportunities for similar violations of trust. The prohibition is therefore directly related to her crime. See Llamas-Villa, 67 Wash.App. at 455-56, 836 P.2d 239 (associating with people who use, possess or deal illegal drugs was conduct intrinsic to defendant's crime of possession of cocaine with intent to deliver, so prohibition against associating with such people was crime-related). The court acted well within its discretion in prohibiting Acrey from using that method to find new victims.
¶ 23 Further, although it is unnecessary to support the prohibition, the record indicates that Mr. Alexander was disabled, at least to some extent. He admitted he signed documents without knowing what they were for. Residence staff had to restrain him from giving away money to other residents. He had lost his driver's license for medical reasons. The record amply supports the prohibition imposed here.
¶ 24 Vagueness. An unconstitutionally vague sentencing condition deprives an offender of due process of law. State v. Sansone, 127 Wash.App. 630, 638-39, 111 P.3d 1251 (2005).[2] The due process vagueness doctrine under the United States Constitution has two purposes: first, to provide adequate notice of proscribed conduct, and second, to protect against arbitrary, ad hoc enforcement. State v. Riles, 135 Wash.2d 326, 348, 957 P.2d 655 (1998). The Constitution does not require impossible standards of specificity or mathematical certainty. Id.
¶ 25 Acrey argues that a person of ordinary intelligence cannot discern the meaning *1220 of "elderly" unless the court defines it by reference to a specific age. She also claims that "disabled" is vague because it encompasses many possible conditions. These terms, standing alone, might be subject to more than one interpretation in some circumstances, and Acrey cites two federal cases holding the term "elderly" too vague to support an upward adjustment to a sentence, and a third holding that the term "elderly" is too vague to be a statutory aggravating factor supporting imposition of the death penalty.[3]
¶ 26 These cases are readily distinguishable, however, and neither Acrey's argument, nor her hypothetical about wealthy clients wanting close companionship or constant service, is persuasive. Acrey ignores the central feature of the prohibition: the sentencing condition forbids her from acting as a caretaker for elderly or disabled people. Acrey does not argue that the term "caretaker" is vague. The court did not prohibit Acrey from caring for children. In all other circumstances that come readily to mind, the need for a caretaker is the salient fact. Acrey is well able to predict the prohibition's application with adequate certainty.
¶ 27 We affirm Acrey's sentence.
COLEMAN, BECKER, JJ, concur.
[DCONUM 012FE507]
NOTES
[1] Acrey does not challenge the unlimited term of the prohibition, but the State noted during oral argument that a term beyond the statutory maximum is beyond the court's authority. The parties may apply to superior court for an amendment to the judgment and sentence limiting the duration of the prohibition.
[2] The parties do not argue whether a sentencing condition may be challenged for facial vagueness, or only as applied in enforcement proceedings. We therefore do not address the issue.
[3] Acrey cites United States v. Smith, 930 F.2d 1450, 1455 (10th Cir.1991); United States v. Tissnolthtos, 115 F.3d 759, 761-62 (10th Cir.1997); State v. White, 395 A.2d 1082, 1090 (Del.1978).