[No. 60706-5-I.   Division One.   September 22, 2008.]

THE STATE OF WASHINGTON, *Respondent*, v. KAREN LEE GAMBLE, *Appellant*.

*Dana M. Lind* (of *Nielsen, Broman & Koch, PLLC*), for appellant.

*Daniel T. Satterberg, Prosecuting Attorney*, and *Laura A. Petregal, Deputy*, for respondent.

¶1 DWYER, A.C.J. — Karen Gamble appeals from the superior court's order incarcerating her for 60 days, entered

upon a finding that she had violated the community custody conditions of her felony sentence. She contends that the legislature, by granting to the Department of Corrections (DOC) the authority to sanction certain violations of community custody conditions, necessarily stripped the superior court of authority to do so. We disagree. Because the legislature, in establishing concurrent enforcement procedures administered by DOC, did not divest superior courts of their authority to enforce the sentences that they impose, we affirm.

I

¶2 Gamble pleaded guilty to a felony charge of violating a domestic violence no-contact order. The State agreed to recommend that she be sentenced under the statutory first-time offender waiver option.

¶3 In accordance with this recommendation, the trial court sentenced Gamble to 61 days of confinement with credit for time served and 24 months of community custody. The terms of community custody included numerous conditions related to substance abuse treatment. Also included was a requirement that Gamble attend a future review hearing.

¶4 Gamble was in custody on another matter on the day of the review hearing and failed to appear. The State indicated that Gamble was alleged to have violated the community custody conditions imposed by the trial court, but both the State and Gamble's counsel represented to the court that DOC had the sole authority to address those violations. The court expressed skepticism that this indeed was the law, inquiring, "so, if I impose conditions that I want them to go to 12-step meetings, it has absolutely no impact?" After the attorneys responded that they were unsure whether DOC had, in fact, scheduled or held a violation hearing for Gamble, the court continued the matter for a later hearing.

¶5 Prior to that hearing, a notice of violation from DOC was filed with the court. This notice had been prepared in

anticipation of the court's originally scheduled hearing. It detailed various violations by Gamble of the community custody conditions and recommended that the court modify its original sentence and order that Gamble be incarcerated for 90 days.

¶6 At the subsequent violations hearing, the State altered its original position, arguing that the court had concurrent jurisdiction with DOC to enforce its community custody sentences. The court accepted this argument and, after hearing testimony, ruled that Gamble had violated the terms of her sentence. The court then imposed 120 days of confinement as well as additional sentence conditions.[1] Gamble appeals.

## II

¶7 Terms of community custody imposed pursuant to a first-time offender waiver sentence are "subject to conditions and sanctions as authorized . . . in RCW 9.94A.715(2) and (3)." RCW 9.94A.650(3)(b). Under RCW 9.94A.715(3), DOC may "transfer the offender to a more restrictive confinement status and impose other available sanctions" if it follows the quasi-judicial procedures set forth in RCW 9.94A.737. According to Gamble, the fact that the superior courts are not referenced in these statutory sections means that, by granting DOC the authority to punish community custody violations, the legislature necessarily divested the superior courts of subject matter jurisdiction to do so. The State responds that, contrary to Gamble's contention, the legislative grant of enforcement authority to DOC did not divest the superior courts of jurisdiction. We agree with the State's analysis.[2]

¶8 RCW 9.94A.650, the statutory provision pursuant to which Gamble was sentenced, allows first-time offenders

---

[1] The court later reduced Gamble's period of confinement to 60 days.

[2] "We review a sentencing court's application of the community custody provisions of the Sentencing Reform Act of 1981, chapter 9.94A RCW, de novo." *State v. Motter*, 139 Wn. App. 797, 801, 162 P.3d 1190 (2007), *review denied*, 163 Wn.2d 1025 (2008).

who meet certain conditions to receive alternative sentences, including community custody in lieu of incarceration. Community custody may include any number of conditions or requirements imposed by the sentencing court. RCW 9.94A.650(1)-(2). RCW 9.94A.650 also provides that "[a]ny term of community custody imposed under this section is subject to conditions and sanctions as authorized in this section and in RCW 9.94A.715(2) and (3)." RCW 9.94A.650(3)(b). These provisions authorize DOC to punish violations of community custody conditions according to a set of statutorily enumerated procedures:

> If an offender violates conditions imposed by the court or the department pursuant to this section during community custody, the department may transfer the offender to a more restrictive confinement status and impose other available sanctions as provided in RCW 9.94A.737 and 9.94A.740.

RCW 9.94A.715(3). The relevant statutory provision establishes specific hearing procedures that DOC must follow in order to impose sanctions for violations of community custody conditions. *See* RCW 9.94A.737.

¶9 None of these statutes mention the superior courts or in any way discuss the authority the superior courts possess to punish offenders who violate the community custody conditions of their sentences. According to Gamble, this omission necessarily means that, by establishing quasi-judicial proceedings administered by DOC, the legislature intended to divest the superior courts of subject matter jurisdiction to enforce criminal sentences by means of sanctioning offenders in violation of community custody conditions, at least in circumstances wherein the sentences were imposed pursuant to the statutory authority governing first-time offender waivers.

¶10 Gamble bases this argument on the principle of statutory construction that, when the legislature lists various items in a statute but omits others, the courts should assume that the items omitted were left out intentionally—"Expressio unius est exclusio alterius," if Latin must be used.

*See City of Seattle v. Parker*, 2 Wn. App. 331, 335, 467 P.2d 858 (1970) (examining firearm ordinance). Thus, Gamble contends, because none of these statutes mention that courts *also* have jurisdiction to enforce community custody conditions, it must be that they do not.[3]

¶11 This interpretation is incorrect. In order to accept it, we must assume—rather than conclude—that the statutory sections to which Gamble points encompass the entire universe of that which may happen to an offender who violates a sentence's community custody conditions. But the statutory provisions to which Gamble points do not exist in such isolation. On the contrary, they are part of the sprawling statutory framework of the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW. The SRA expressly provides that sentencing courts possess the authority to modify the original sentences that they impose:

> If an offender violates *any condition or requirement* of a sentence, the court may modify its order of judgment and sentence and impose further punishment in accordance with this section.

RCW 9.94A.634(1) (emphasis added).

¶12 "There is no need to interpret statutes that are unambiguous." *In re Pers. Restraint of Silas*, 135 Wn. App. 564, 569, 145 P.3d 1219 (2006). The plain language of RCW 9.94A.634(1) demonstrates that the superior courts retain authority—and thus jurisdiction—to enforce the conditions of the sentences that they impose. True, the SRA also grants to DOC the authority to impose sanctions for violations of a specific subset of sentence conditions, including the community custody conditions of sentences imposed pursuant to the first-time offender waiver option. The legislature may even have intended that this be the pre-

---

[3] Gamble contends that amendments to chapter 9.94A RCW, effective June 12, 2008, and August 1, 2009, support this interpretation. *See* LAWS OF 2008, ch. 231, §§ 6, 18. But the order from which Gamble appeals was entered on September 20, 2007; the amendments do not apply to it. In any event, Gamble raised this contention for the first time during oral argument, and so we decline to consider it. RAP 12.1(a); *State v. Johnson*, 119 Wn.2d 167, 170, 829 P.2d 1082 (1992).

ferred procedure for enforcing community custody conditions in such cases. However, only by ignoring RCW 9.94A.634 is it possible to conclude that, by giving DOC this authority, the legislature intended to remove the concurrent jurisdiction of the superior courts. "We interpret statutory language in the context of the entire statute and its purpose, and avoid strained interpretations." *State v. Manro*, 125 Wn. App. 165, 173, 104 P.3d 708 (2005).

¶13 The single case to which Gamble cites in support of the contention that exclusive jurisdiction was granted to DOC is actually unhelpful to her position. In *In re Pers. Restraint of McNeal*, 99 Wn. App. 617, 625, 994 P.2d 890 (2000), a case having nothing to do with the subject matter jurisdiction of the superior courts, we stated:

> [Former] RCW 9.94A.200 [current RCW 9.94A.634] provides for noncompliance with conditions or requirements of sentences generally. The court may impose further punishment for violations, and the State has the burden of proving noncompliance by a preponderance of the evidence. In contrast, the Legislature provided specifically for community custody violations in [former] RCW 9.94A.205 [current RCW 9.94A.737]. There is no mention of court involvement. Rather, DOC holds the hearing and determines and imposes sanctions.

(Footnote omitted.) What Gamble neglects to mention about this passage is that in it we were paraphrasing an argument that the State was making in relation to the issues presented in the case; we were *not* independently stating the law in a manner that can be read as a holding (or even dictum) in the case. Moreover, we *rejected* the State's argument after summarizing it. *McNeal*, 99 Wn. App. at 625.

¶14 Those cases that have actually touched on the issue that Gamble raises favor the State's position. In *State v. Acrey*, 135 Wn. App. 938, 945, 146 P.3d 1215 (2006), a case upholding a felony sentence condition, we held that "[t]he court's jurisdiction to enter and enforce its sentence does not depend upon the authority given the Department of Corrections." While the argument advanced in that case

was that a sentence condition was unenforceable because it was not a community custody condition, *Acrey*, 135 Wn. App. at 945, our rationale applies equally here insofar as it indicates that the sentence review jurisdiction of the superior courts is not necessarily mutually exclusive with similar DOC authority.

¶15 It is worth noting that, in *Acrey*, we also interpreted the word "any" as used in the SRA, observing that " '[a]ny' means 'one, no matter what one : EVERY . . . without restriction or limitation of choice.' " *Acrey*, 135 Wn. App. at 943 (second alteration in original) (quoting WEBSTER's THIRD NEW INTERNATIONAL DICTIONARY 97 (1993)). In other words, when the legislature used the phrase "any" in the SRA, it meant *any*. There is no reason to conclude that this is not also true of the phrase "any condition or requirement of a sentence" as used in RCW 9.94A.634.

¶16 Prior cases also support our holding herein. For example, in *State v. Johnson*, 54 Wn. App. 489, 491, 774 P.2d 526 (1989), we held that "in the absence of statutory language indicating otherwise, a sentencing court has jurisdiction to enforce the requirements of a sentence imposed until those requirements are met and/or a certificate of discharge is provided to the offender upon completion of his or her sentence." *Accord State v. Zabroski*, 56 Wn. App. 263, 267, 783 P.2d 127 (1989); *State v. Neal*, 54 Wn. App. 760, 763, 775 P.2d 996 (1989). There is no statement in any of the SRA provisions granting DOC sentence enforcement authority over offenders such as Gamble that purports to divest the superior courts of such jurisdiction. Indeed, the only plausible theory that Gamble advances in support of her position relies on the *absence* of language addressing superior court jurisdiction.

¶17 In sum, the legislature did not, by authorizing DOC to punish community custody violations, divest the superior courts of their subject matter jurisdiction to do so. On the

contrary, it expressly provided otherwise. There was no error.

¶18 Affirmed.

ELLINGTON and APPELWICK, JJ., concur.