IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 30605-4-III |
| | ) | (consolidated with |
| Respondent, | ) | No. 30606-2-III, |
| | ) | No. 30607-1-III, |
| v. | ) | No. 30608-9-III, |
| | ) | No. 30609-7-III)[†] |
| SCOTT T. HURLEY, | ) | |
| | ) | |
| Appellant. | ) | UNPUBLISHED OPINION |

SIDDOWAY, A.C.J. — Scott Hurley, who owes over $15,000 in restitution and

other legal financial obligations (LFOs) ordered in connection with sentences imposed

following his pleas of guilty in 2002 and 2004, challenges the method by which Spokane

County punished his failure to comply with financial reporting practices adopted by the

county clerk: it imposed 60 days' jail time for each willful failure to comply with the

clerk's procedures.

---

[†] The 2012 orders that are the subject matter of this appeal imposed sanctions for violations related to legal financial obligations ordered by five judgment and sentences entered on the basis of plea agreements by Scott Hurley. Mr. Hurley's 2002 judgment and sentences addressed two original charges (Spokane County Superior Court Cause Nos. 02-1-01896-4 and 02-1-01409-8); his 2004 judgment and sentences addressed three (Cause Nos. 03-1-02132-7, 03-1-03732-1, and 03-1-03872-6). Mr. Hurley therefore filed five notices of appeal that were consolidated for decision.

Mr. Hurley concedes that Washington statutes authorize the superior court to jail him for 60 days for a willful failure to pay the LFOs, since paying them is a condition of his sentence. He disputes the court's authority to multiply that sanction, in his case threefold, by treating every failure to comply with county reporting requirements as if those requirements were also conditions of his sentence.

By the time these consolidated appeals were presented for our decision, Mr. Hurley had served the confinement time imposed as a sanction, so his appeal is moot. While he makes a reasonable case that the issue he presents will recur, we conclude that the record and briefing in this matter (though not the fault of Mr. Hurley) makes this case a poor vehicle for deciding the issues presented. We dismiss the appeal as moot.

FACTS AND PROCEDURAL BACKGROUND

In 2002, Scott Hurley pleaded guilty to conspiracy to manufacture methamphetamine, attempt to elude, and possession of methamphetamine. In addition to a term of confinement, the court ordered Mr. Hurley to pay $4,757 in LFOs. A "legal financial obligation" is defined as "a sum of money that is ordered by a superior court of the state of Washington for legal financial obligations," and may include "restitution to the victim, statutorily imposed crime victims' compensation fees . . . , court costs, county

or interlocal drug funds, court-appointed attorneys' fees, . . . costs of defense, [and] fines." RCW 9.94A.030(30). [1]

In 2004, Mr. Hurley pleaded guilty to conspiracy to manufacture methamphetamine, first degree theft, third degree assault, and second degree possession of stolen property. In addition to a term of confinement, the court ordered him to pay $3,370 in LFOs.

The judgment and sentences provided that "payments shall be made in accordance with the policies of the clerk and on a schedule established by the [Department of Corrections], commencing immediately, unless the court specifically sets forth the rate here." Clerk's Papers (CP) at 5, 67, 129, 192, 250. The 2002 judgment and sentences provided that the monthly amount would be determined "per [community corrections officer]." CP at 5, 67. The 2004 judgment and sentences established a $30 per month payment amount, to commence within 30 days of release. CP at 129, 192, 250.

Before 2012 and the orders at issue in this appeal, Mr. Hurley's failures to report to the county clerk, provide financial information, and make payment toward his LFOs

---

[1] As a result of continual modification of chapters 9.94A and 9.94B RCW, a number of their provisions cited in this opinion have been recodified over the 11-year time span between the first of Mr. Hurley's offenses at issue and the 2012 orders under review. Because the changes have not been significant or substantive, we generally cite the current statutes.

3

had resulted in numerous orders "enforcing sentence" and imposing additional jail time.[2]

Each order was entered after the clerk's office submitted a violation report to the court,

Mr. Hurley was given notice requiring him to appear for hearing, and he elected to enter

into an agreed order. In the last three cases, Mr. Hurley had first been arrested for his

violations and was in custody. Mr. Hurley's lawyer in the 2012 proceeding at issue in

this appeal would later describe the system in operation in Spokane County as follows:

> [O]ffenders arrested on failure to pay LFO[s] are set for a hearing on the
> next Friday docket. Prior to the hearing the prosecutor usually makes them
> an offer regarding jail time, immediate dollar release amount, and future

---

[2] The orders were entered on the following dates:

| Date of order | Violations noted | Sanction |
| --- | --- | --- |
| 5/25/2007 | Failing to report, failing to pay, failing to complete financial assessment form | 30 days' jail time |
| 3/27/2008 | Failing to complete financial assessment form, failing to comply with 5/25/07 order, failing to report to jail per auto-jail provision | 60 days' jail time (except in cause number 03-1-037321, in which the sanction was 30 days) |
| 2/4/2009 | Failing to comply with 5/25/07 order, failing to comply with 3/27/08 order, failing to report to jail per auto-jail provision | 60 days' jail time (except in cause number 03-1-037321, in which the sanction was 45 days) |
| 8/9/2010 | Failing to pay | 60 days' jail time |

4

> monthly payments. Before this offer is tendered, the prosecutor requires
> the offender provide a financial declaration to the collection clerk. The
> public defender's office is held to the task of gathering the information for
> the financial declaration while the offender is in custody.

CP at 45.

The agreed orders itemized his violations, found them to be willful, and were signed by Mr. Hurley or his lawyer. Each one modified his obligations as to his LFOs. Unlike the original 2002 and 2004 judgment and sentences ordering payment of the LFOs to the clerk in accordance with policies of the clerk, the enforcement orders included a number of additional requirements not involving payment: requirements that Mr. Hurley report in person to the office of the Spokane county clerk within 48 hours of release or at the time of any change in information, provide a current address, keep the clerk advised of a current address at all times, and provide current financial information to the clerk. They provided that failure to comply would result in a bench warrant being issued and the possibility of additional sanctions.

The particular orders challenged in this appeal were entered in January 2012, after Mr. Hurley was arrested in late 2011 on a bench warrant issued for violations associated with his LFOs. A hearing was held on January 6, at which Mr. Hurley was represented.

The State argued Mr. Hurley should again be sanctioned, and this time for multiple violations: (1) failure to pay, (2) failure to complete and return a financial assessment form, and (3) failure to notify the clerk's office of a change in circumstances.

5

It presented testimony from Todd Taylor, presumably an employee of the clerk's office, who testified Mr. Hurley had paid only $398.52 to date, with his last payment being in 2010. He testified that the then-current balance of Mr. Hurley's LFOs was $16,792.99, including interest.

With respect to the failure to complete and return a financial assessment form, Mr. Taylor testified that several days before the hearing, a financial declaration had been provided for Mr. Hurley but because it was not signed, he "could not say that this was actually reviewed by the defendant or filled out by the defendant." Report of Proceedings at 6. Mr. Taylor regarded Mr. Hurley's provision of the form without a signature as a violation. Mr. Taylor also testified that Mr. Hurley failed to notify the clerk's office of a change in circumstances because the previous financial declaration listed his income as $1,800, but the declaration received on the date of the hearing indicated he was not working at the time.

Mr. Hurley offered explanations and argument addressing compliance or noncompliance that we need not detail because they are not relevant to the potentially recurring issues that he raises in this appeal. The trial court was not persuaded, found that Mr. Hurley willfully violated the requirement to pay his LFOs, failed to notify the clerk's office of a change in circumstances, and failed to provide his financial assessment. It imposed 180 days' incarceration for each sentence to run concurrently.

Mr. Hurley moved for reconsideration. The court denied the motion but agreed to modify the sentence and allow Mr. Hurley to serve it in an inpatient treatment facility rather than the county jail. Mr. Hurley appealed.

## ANALYSIS

Under RCW 9.94A.760(1) a trial court may order payment of an LFO as part of a sentence. Once a court imposes an LFO, the offender must be set up on a monthly payment plan. *Id.* For offenses committed after June 30, 2000, the sentencing court may retain jurisdiction and enforce the judgment "until the obligation is completely satisfied, regardless of the statutory maximum for the crime." RCW 9.94A.760(4).

Before 2003, former RCW 9.94A.760 authorized the Department of Corrections to supervise an offender's compliance with his obligation to pay LFOs. The department's authority continued for 10 years following the entry of the judgment and sentence or 10 years following the offender's release from total confinement, whichever period was longer.

In 2003, the legislature responded to suggestions and requests made by county government officials, and in particular county clerks, who wished to participate in collecting LFOs. LAWS OF 2003, ch. 379, § 14. As amended, RCW 9.94A.760 authorized the department to supervise the offender's payment compliance during any period of confinement or department supervision in the community but delegated authority for all later periods to the county clerks. RCW 9.94A.760(4).

7

A new subsection (7)(b) was added to RCW 9.94A.760 by the amendments, providing that during the period of a county clerk's supervision the clerk could recommend to the court that an offender's payment schedule be modified to reflect a change in financial circumstances. Most important for purposes of Mr. Hurley's appeal, amended subsection (7)(b) also provided:

> During the period of repayment, the county clerk may require the offender to report to the clerk for the purpose of reviewing the appropriateness of the collection schedule for the legal financial obligation. During this reporting, the offender is required under oath to respond truthfully and honestly to all questions concerning earning capabilities and the location and nature of all property or financial assets. The offender shall bring all documents requested by the county clerk in order to prepare the collection schedule.

The legislature provided that the foregoing amendments applied "to all offenders currently, or in the future, subject to sentences with unsatisfied legal financial obligations." RCW 9.94A.925.

Following the 2003 amendments, Spokane County created the financial forms and change of circumstance notice requirements that Mr. Hurley is alleged to have failed to complete or violated, resulting in the court's imposition of 120 days of jail time in addition to the 60 days imposed for his failure to pay. The problem, according to Mr. Hurley, is that while the current version of RCW 9.94A.760(7)(b) authorizes the county clerk to require the offender to report, the legislature has never enacted a corresponding provision creating a remedy if an offender does not comply. In what Mr. Hurley argues is a remedial vacuum, Spokane County relies on the superior court to impose additional

jail time for reporting violations and the superior court has accepted the invitation—although without statutory authority, according to Mr. Hurley.

A trial court may impose only a sentence authorized by statute. *In re Pers. Restraint of Carle*, 93 Wn.2d 31, 33, 604 P.2d 1293 (1980). RCW 9.94A.505(8) provides that in imposing sentences upon a felony conviction "the court may impose and enforce crime-related prohibitions and affirmative conditions as provided in this chapter." The language "as provided in this chapter" has been construed as not requiring authorization of crime-related prohibitions by some other provision of the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW. *State v. Acrey*, 135 Wn. App. 938, 943-44, 146 P.3d 1215 (2006) (noting the last antecedent rule of statutory interpretation, under which the qualifying words refer to the last antecedent, "affirmative conditions," rather than "crime-related prohibitions"); *State v. Armendariz*, 160 Wn.2d 106, 114, 156 P.3d 201 (2007). The qualifier clearly applies to affirmative conditions, however. *See Acrey*, 135 Wn. App. at 944; *Armendariz*, 160 Wn.2d at 114.

The SRA provides for a number of affirmative conditions that can be imposed depending on the circumstances and identifies them, clearly, as sentencing conditions. *E.g.*, RCW 9.94A.607(1) (providing that where an offender's chemical dependency contributed to his or her offense, "the court may, as a condition of the sentence . . . , order the offender to participate in rehabilitative programs"); RCW 9.94A.703(3) (providing that "[w]hen a court sentences a person to a term of community custody, the court shall

9

impose conditions of community custody as provided in this section" and identifying discretionary conditions); RCW 9.94A.670(5), (6) (identifying conditions that a court "must impose" and "may impose" when using a special sex offender sentencing alternative).

RCW 9.94A.760(10) likewise clearly provides, "The requirement that the offender *pay a monthly sum towards a legal financial obligation* constitutes a condition or requirement of a sentence and the offender is subject to the penalties for noncompliance as provided in RCW 9.94B.040, 9.94A.737, or 9.94A.740." (Emphasis added.) There is no parallel reference to penalties for noncompliance being available if an offender is merely noncompliant with the duty to report to the county clerk addressed by subsection (7)(b) of the same statute. Yet under Spokane's system for enforcement and collection, an offender may get more jail time for the several ways he can fail to comply with county clerk requirements than will be imposed for violating the LFO payment condition of his sentence—in Mr. Hurley's case, 120 days of his 180-day sanction.

"'The SRA permits modification of sentences only in specific, carefully delineated circumstances,'" with its authority to increase the duration of an offender's commitment provided by RCW 9.94B.040.[3] *State v. Nason*, 146 Wn. App. 744, 750-51, 192 P.3d 386 (2008) (quoting *State v. Shove*, 113 Wn.2d 83, 86, 776 P.2d 132 (1989)), *rev'd in part on*

---

[3] Formerly RCW 9.94A.634.

*other grounds*, 168 Wn.2d 936, 233 P.3d 848 (2010). While we appreciate the difficulties that county clerks can encounter in collecting LFOs from feckless offenders, Mr. Hurley raises a viable question whether the legislature intended by RCW 9.94A.760(7)(b) to authorize county clerks to create their own sentencing conditions that could be incorporated into modified judgments with violations then punished under RCW 9.94B.040.

Mr. Hurley further argues that certain of the 2003 amendments delegating the power to collect financial obligations to county clerks violate principles of separation of powers by failing to provide standards or safeguards against arbitrary actions or discretionary abuse.

In *Nason*, the Supreme Court characterized the argument that the Spokane county clerk's system exceeds its authority as "interesting," but it concluded that in that case the issue had not been preserved. 168 Wn.2d at 940 n.3. The Supreme Court likewise declined to reach the separation of powers issue, which was raised by the appellant in *Nason* in supplemental briefing. *Id.*

We feel constrained to deny review of the issues here as well. Mr. Hurley presents us with an appeal that is moot, in that he has already served his confinement time for noncompliance at the time his appeal is presented to us for decision. "A case is moot if a court can no longer provide effective relief." *Blackmon v. Blackmon*, 155 Wn. App. 715, 719, 230 P.3d 233 (2010). He recognizes the probable mootness of his appeal but

11

speculates that he may suffer adverse consequences in the future if the challenged increase in his sentence remains in effect—yet he presents no viable risk presented by the 2012 orders. He argues more persuasively that we should decide the case even if it is moot, in order to resolve issues of continuing and substantial public interest.

The problem we face in deciding the appeal on this record, though, is the lack of any meaningful adversarial engagement on what are not simple issues. The only reason we would decide this moot appeal is for the purpose of publishing it and providing guidance to others. The issues have important ramifications for third parties entitled to restitution. We need to have the county clerks' arguments in favor of a judicial remedy effectively presented. The State's appellate briefing in this case does not seriously reflect on Mr. Hurley's arguments and meet them; instead, it mischaracterizes them, trivializes them, and responds conclusorily. This is not Mr. Hurley's fault, of course, and the State cannot avoid decision on these issues indefinitely by treating a case that is moot as one that is therefore unimportant. On this occasion, however, we dismiss the appeal as moot.

A majority of the panel has determined that this opinion will not be printed in the

Washington Appellate Reports but it will be filed for public record pursuant to RCW

2.06.040.

_____
Siddoway, A.C.J.

WE CONCUR:

_____
Brown, J.

_____
Kulik, J.