FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE AUG 10 2017
CHIEF JUSTICE

This opinion was filed for record
at 8:00 am on Aug. 10, 2017

SUSAN L. CARLSON
SUPREME COURT CLERK

IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 93987-0 |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | En Banc |
| | ) | |
| BRANDON M. BIGSBY, | ) | |
| | ) | Filed ___ AUG 1 0 2017 ___ |
| Petitioner. | ) | |
| | ) | |
| | ) | |

GONZÁLEZ, J.—Brandon Bigsby failed to undergo a chemical dependency evaluation after he was released from jail on community custody as ordered by the trial court. Both the Department of Corrections (Department) and the trial court sanctioned him for failing to comply with the court's order. At issue is whether the trial court had statutory authorization under RCW 9.94B.040 to sanction Bigsby for sentence violations committed while he was on community custody under the Department's supervision for a 2014 crime. We hold it did not and reverse.[1]

---

[1] Our analysis is limited to the court's statutory sanctioning authority under RCW 9.94B.040. Bigsby challenges the court's authority only to impose sanctions, not its authority to order him to appear at a sentencing hearing. And the State defends the trial

FACTS AND PROCEDURAL HISTORY

Officers found heroin and methamphetamine in Bigsby's pockets when they apprehended him for shoplifting at Walmart on October 8, 2014. The State charged Bigsby with possession of a controlled substance. Bigsby pleaded guilty. The trial court sentenced Bigsby to 75 days of confinement and 12 months of community custody under the Department's supervision. Additionally, the trial court ordered Bigsby to undergo a chemical dependency evaluation and ordered that he return to court on August 5, 2015 for a sentence review hearing "with evaluation in hand or paperwork to prove [he] signed up for treatment." Clerk's Papers (CP) at 34. The trial court warned Bigsby that if he did not obtain the evaluation by that date, it would sanction him to at least 30 to 60 days in confinement. Plea of Guilty & Sentencing Tr. (May 13, 2015) at 6.

Bigsby failed to obtain a chemical dependency evaluation by the court's deadline, and the trial court sanctioned him to 30 days in confinement.[2] At the sentence review hearing, Bigsby acknowledged that he

---

court's sanction only under RCW 9.94B.040; it does not argue the sanction was authorized under the court's inherent contempt authority or any other statutory provision. *See In re Interest of Silva*, 166 Wn.2d 133, 145, 206 P.3d 1240 (2009) (discussing the court's inherent sanctioning authority).

[2] The hearing occurred on September 14, rather than August 5, because Bigsby was in the custody of the Yakima County Corrections office on August 5. Bigsby's failure to appear at the August 5 hearing is not at issue here because the trial court did not sanction him for his failure to appear despite Bigsby's contention that it did. CP at 3 (ordering

2

did not undergo a chemical dependency evaluation but challenged the court's authority to sanction him for his noncompliance since the statute relating to his community custody status, RCW 9.94A.6332(7), provides "any sanctions" for violations of sentence conditions or requirements "shall be imposed by the department"—not the court.

The trial court rejected Bigsby's claim that RCW 9.94A.6332(7) vested sole statutory sanctioning authority in the Department. Sentence Review Hr'g Tr. (Sept. 14, 2015) at 8-9. The Court of Appeals affirmed, citing the trial court's broad sanctioning authority under RCW 9.94B.040 as support for the court's sanction. *State v. Bigsby*, 196 Wn. App. 803, 811-12, 384 P.3d 668 (2016), *review granted*, 187 Wn.2d 1025, 391 P.3d 457 (2017). That statute authorizes the trial court to punish an offender for violating a sentence condition or requirement imposed by the court. RCW 9.94B.040(1). Most relevantly, the statute specifically authorizes the court to override any sanctions imposed by the Department with different sanctions if the court is dissatisfied with the Department's sanctions. RCW 9.94B.040(3)(b).

Bigsby argues the Court of Appeals erroneously relied on RCW

---

"the defendant . . . to serve 30 days in custody as a sanction for failing to obtain a chemical dependency evaluation as ordered"); Sentence Review Hr'g Tr. (Sept. 14, 2015) at 7 (explaining that it could, it "suppose[d], excuse [Bigsby's] failure to show up for that hearing" since he was in the Department's custody at the time of the scheduled hearing).

9.94B.040 because that statute, in his opinion, applies only to "'crimes committed prior to July 1, 2000.'" Reply Br. of Appellant at 1-2 (quoting RCW 9.94B.010(1)). The Court of Appeals rejected Bigsby's assessment, concluding that "while the statute refers to pre-2000 offenses, it does not state that the chapter applies only to those offenses." *Bigsby*, 196 Wn. App. at 810.

We granted review to determine whether RCW 9.94B.040 applies to Bigsby's 2014 offense.[3] *Bigsby*, 187 Wn.2d 1025. As explained below, we hold RCW 9.94B.040 applies only to crimes committed prior to July 1, 2000 and therefore reverse the Court of Appeals.

ANALYSIS

This case addresses the statutory authority of sentencing courts to sanction an offender for violating conditions of his or her sentence after the offender has been released into community custody. "'Community

---

[3] The parties agree this issue is technically moot because Bigsby completed the trial court's 30-day sanction before his appeal was filed. Br. of Appellant at 6; Br. of Resp't at 3. The Court of Appeals nevertheless retained review because it determined the case involved an issue of substantial public interest that was likely to reoccur. *Bigsby*, 196 Wn. App. at 807-08 (citing *In re Det. of Cross*, 99 Wn.2d 373, 377, 662 P.2d 828 (1983)). We agree that appellate review was proper. Not only does this case raise an issue of first impression of continuing and substantial public interest, the issue is one that would escape appellate review under strict application of the mootness doctrine given the statutory cap of 60 days of confinement for community custody violations under RCW 9.94A.633. *In re Marriage of Horner*, 151 Wn.2d 884, 892, 93 P.3d 124 (2004) ("'[T]he court may consider the likelihood that the issue will escape review because the facts of the controversy are short-lived.'" (internal quotation marks omitted) (quoting *Westerman v. Cary*, 125 Wn.2d 277, 286-87, 892 P.2d 1067 (1994))).

custody'" is the "portion of an offender's sentence of confinement in lieu of earned release time or imposed as part of a sentence . . . served in the community subject to controls placed on the offender's movement and activities by the department." RCW 9.94A.030(5). Although an offender on community custody is subject to the Department's supervision, the Department generally has discretion over whether it will invoke that supervisory authority based on its assessment of the offender's risk to community safety. RCW 9.94A.704(2)(b). This risk-based assessment allows the Department to prioritize and concentrate its limited financial capital and human resources on those offenders it perceives as posing the greatest risk.

Because an offender can be released into the community for many reasons and may or may not be supervised by the Department while he or she is on community custody, the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW, contains several statutes detailing the courts' and the Department's supervisory and sanctioning authority over different categories of offenders.

Three statutes, RCW 9.94A.660(6)-(7), .670(10)-(12), and .655(5)-(7), explain that when an offender is sentenced to community custody under special sentencing alternatives for certain drug or sex crimes, or because the

offender is a parent, the court has concurrent supervisory authority with the Department over these offenders. Outside of these narrow categories, RCW 9.94A.6333(1) explains that the court is authorized to "modify its order of judgment and sentence and impose further punishment" when an offender violates a sentence condition or requirement, but only if the offender "is not being supervised by the department."

RCW 9.94A.6332 confirms statutory sanctioning authority "for violations of sentence conditions or requirements" under the SRA is allocated based on the offender's status. Like RCW 9.94A.660, .670, and .655, subsections (1) through (3) of RCW 9.94A.6332 explain that when the offender is sentenced to community custody under the drug offender sentencing alternative, the special sex offender sentencing alternative, or the parenting sentencing alternative, "any sanctions shall be imposed by the department or the court." Subsections (4) through (6) identify a limited class of sex offenders and juvenile offenders over whom sanctioning authority is vested in the indeterminate sentence review board. Finally, subsections (7) and (8) are catchall provisions that apply "[i]n any other case." Like RCW 9.94A.6333, subsections (7) and (8) distinguish those offenders the Department is supervising from those it is not. Subsections (7) and (8) state that "if the offender is being supervised by the department, any sanctions

6

shall be imposed by the department," but "[i]f the offender is not being supervised by the department, any sanctions shall be imposed by the court."

The parties agree that Bigsby's offender status placed him under the catchall category of "other" offenders over whom RCW 9.94A.6332(7) provides "any sanctions shall be imposed by the department." They disagree whether that statute conveys exclusive sanctioning authority to the Department or establishes a preferred sanctioning scheme with the courts retaining concurrent sanctioning authority under RCW 9.94B.040.

RCW 9.94B.040(1) provides that "[i]f an offender violates any condition or requirement of a sentence, the court may modify its order of judgment and sentence and impose further punishment in accordance with this section." Together, subsections (3)(b) and (c) of RCW 9.94B.040 explain that if "the court is not satisfied with the department's sanctions," then the court may punish the offender for his or her noncompliance. While RCW 9.94B.040 clearly contemplates the courts having concurrent and overriding sanctioning authority for community custody violations, the legislature specifically removed that statute from chapter 9.94A RCW, LAWS OF 2008, ch. 231, § 56(1), and placed it in a different chapter with other statutes, *id.* § 56, it deemed "may be applicable to sentences for crimes committed prior to July 1, 2000," *id.* § 51(1) (codified as RCW 9.94B.010(1)).

7

Bigsby interprets the "may be applicable" language as restricting RCW 9.94B.040 to crimes committed prior to that date, whereas the State interprets the language as recognizing the statute might not be applicable to crimes committed prior to July 1, 2000 but retaining its application to crimes committed after that date.

Our fundamental purpose in construing statutes is to ascertain and carry out the legislature's intent. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002). If a statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of the legislature's intent. *Id.* The court ascertains a statute's plain meaning by construing that statute along with all related statutes as a unified whole and with an eye toward finding a harmonious statutory scheme. *See id.* Legislative history serves an important role in divining legislative intent. Where provisions of an act appear to conflict, we may discern legislative intent by examining the legislative history of the enactments. *Gorman v. Garlock, Inc.*, 155 Wn.2d 198, 211, 118 P.3d 311 (2005) (citing *Timberline Air Serv., Inc. v. Bell Helicopter-Textron, Inc.*, 125 Wn.2d 305, 312, 884 P.2d 920 (1994)). As discussed below, legislative history favors Bigsby's analysis. To the extent RCW 9.94B.040 applies at all, it applies only to sentences for crimes committed prior to July 1, 2000.

8

Before 2008, RCW 9.94B.040 was listed under chapter 9.94A RCW.[4]

In 2008, the legislature moved the statute to a newly created chapter that

"codifie[d] sentencing provisions that may be applicable to sentences for

crimes committed prior to July 1, 2000." LAWS OF 2008, ch. 231, § 51(1).

The legislature explained this revision occurred as part of a general

housekeeping bill meant to clarify existing confusion among judges, lawyers,

offenders, and the Department regarding their respective supervisory authority

over offenders released on community custody. *Id.* § 6. The legislature

traced the genesis of this confusion back to 1999 when it abolished the

postrelease supervision program and replaced it with a singular program of

community custody while also leaving the provisions relating to postrelease

supervision in place because those provisions remained applicable to

offenders who committed crimes prior to July 1, 2000.

Prior to July 1, 2000, the authority of the courts and the Department to

sanction an offender for violating a condition of his or her sentence

depended on whether he or she was released on community custody or

postrelease supervision. The Department was authorized to sanction

_____

[4] RCW 9.94B.040 was originally codified as former RCW 9.94A.200 (1999) and later recodified as former RCW 9.94A.634 (2008). Although the statute has had different numeric designations during the relevant historical period, to avoid confusion, we refer to the statute throughout this opinion as RCW 9.94B.040 regardless of the statute's actual designation at the referenced time.

offenders on community custody—those offenders who had earned good time in prison and were released from confinement in lieu of earned early release time. Because these offenders had not completed their term of confinement, their "[v]iolations of sentence conditions [were] reviewed at an inmate disciplinary hearing conducted by the Department of Corrections" rather than at a separate court hearing. WASH. SENTENCING GUIDELINES COMM'N, SENTENCING GUIDELINES IMPLEMENTATION MANUAL I-42 (1998). In contrast, those offenders who had completed their sentences of confinement were not released on community custody, but rather were released on postrelease supervision instead. Since these offenders had completed their terms of confinement, they were entitled to a court hearing when they were accused of violating a sentence condition. *Id.* As a result, the Department had to keep track of whether an offender was released on community custody or postrelease supervision status and whether that status had changed while the offender was in the community in order to determine whether it had statutory authorization to sanction the offender for violating his or her sentence conditions.

According to then-Governor Gary Locke, this allocation of supervisory authority hamstrung the Department's ability to protect the community and resulted in many offenders escaping punishment because of

the significant backlog in the courts. Gov. Gary Locke, *Giving Our Communities the Protection They Need*, 18 COMMUNIQUÉ (Wash. Dep't of Corr.) no. 1, at 1-2 (Jan. 1999). The legislature responded to the governor's concern by enacting the Offender Accountability Act (OAA), which consolidated postrelease supervision into one term of community custody for offenses committed on or after July 1, 2000. *E.g.*, LAWS OF 1999, ch. 196, §§ 5(5)(b), (5)(7). This change alleviated some of the Department's concerns that offenders on postrelease supervision were escaping punishment because of clogged court dockets.

In addition to increasing the types of offenders over whom the Department had authority to sanction for release violations, the OAA substantially increased the authority and independence of the Department. David Boerner & Roxanne Lieb, *Sentencing Reform in the Other Washington*, 28 CRIME & JUST. 71, 113 (2001). Under the OAA, the Department was authorized to "[c]onduct administrative hearings on violations, so [it did not] have to follow the more-time-consuming path of going back to court." Gov. Locke, *supra*, at 2.

These changes caused great confusion for judges, lawyers, offenders, and the Department partly because even though the legislature abolished postrelease supervision for crimes committed on or after July 1, 2000, it kept

the statutory provisions relating to postrelease supervision in place. The legislature identified these duplicative provisions coupled with seemingly conflicting statutes as "caus[ing] great confusion." LAWS OF 2008, ch. 231, § 6. One example of conflict among the statutes was the fact that even though "[a trial judge] may order conditions of supervision as part of an offender's sentence[,] . . . RCW 9.94A.501 provides that [the Department] may not supervise an offender who is assessed in one of the two lowest risk categories [and] [a]s currently interpreted and invoked, this statute trumps any sentence imposed by [the trial judge]." WASH. STATE LEGISLATIVE TASK FORCE ON CMTY. CUSTODY & CMTY. SUPERVISION, REPORT AND RECOMMENDATIONS TO THE LEGISLATURE 11 (2007), http://leg.wa.gov/Senate/Committees/HSMH/documents/CommunitySupervi sionTFFinalRpt.pdf [https://perma.cc/V6KN-WN4F].

Because of this confusion, the legislature substantially revised the community custody provisions in 2008. LAWS OF 2008, ch. 231, § 6. First, the legislature enacted completely new provisions that were "intended to simplify the supervision provisions of the sentencing reform act and increase the uniformity of its application." *Id.* Second, the legislature converted all outstanding postrelease supervision terms into community custody terms. *Id.* The legislature was concerned, however, that this conversion might be

unconstitutional. *Id.* In light of that concern, the legislature moved certain statutes relating to pre-OAA sentences—including RCW 9.94B.040—to another chapter that it explained "may be applicable to sentences for crimes committed prior to July 1, 2000," *id.* § 51(1), but reaffirmed its intent that these provisions be a "supplement[]" to chapter 9.94A RCW, *id.* § 51(2).

This legislative history supports holding RCW 9.94B.040 does not apply in this case involving a 2014 crime. Indeed, the corresponding bill report from the Senate Committee on the Judiciary confirms chapter 9.94B RCW contains "[o]bsolete provisions" relating to pre-OAA sentencing forms that might be relevant to those offenders who had been sentenced pre-OAA and whose postrelease supervision terms could not be constitutionally converted into community custody terms. S.B. REP. ON H.B. 2719, at 2, 60th Leg., Reg. Sess. (Wash. 2008). Most instructive is the fact that when the legislature moved RCW 9.94B.040 to a different chapter, it replaced the statute with a new provision, RCW 9.94A.6333, which contains substantially the same language as RCW 9.94B.040 regarding the scope of the court's sanctioning authority but includes a new addition that this authority is now limited to instances where "the offender is not being supervised by the department." LAWS OF 2008, ch. 231, § 19(1) (codified as RCW 9.94A.6333(1)).

Thus, while the State is correct that the legislature has instructed the court to not construe its 2008 revisions as making any substantive changes to the supervisory authorities of the courts, *id.* § 6, the State's reliance on the Court of Appeals's holding in *State v. Gamble*, 146 Wn. App. 813, 818-19, 192 P.3d 399 (2008), to support finding concurrent sanctioning authority in the courts under RCW 9.94B.040 post-2008 is misplaced. Although *Gamble* did find the courts had concurrent sanctioning authority under RCW 9.94B.040, that case addressed the pre-2008 statutory scheme. The Court of Appeals specifically explained that it was considering the statutes only as they existed in 2007 and specifically declined to consider the effect the 2008 legislative amendments had on that authority. *Id.* at 818 n.3. As explained above, the 2008 changes were significant since they were enacted to clarify confusion among the courts regarding the allocation of sanctioning authority between the courts, the Department, and the indeterminate sentence review board. For this reason, we find *Gamble* neither helpful nor persuasive.

CONCLUSION

We reverse the Court of Appeals. The trial court did not have statutory authority under RCW 9.94B.040 to sanction Bigsby for violating a condition of his sentence while he was on community custody for a 2014 crime. That statute applies only to crimes committed prior to July 1, 2000.

14

Gonzáles, J.

WE CONCUR:

Fairhurst, C.J.

Stephens, J.

Johnson, J.

Wiggins, J.

Madsen, J.

Gordon McCloud, J.

Owens, J.

Yu, J.

15