FILED
COURT OF APPEALS
DIVISION II

2015 FEB -3 AM 8: 51

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 44569-7-II |
| Respondent, | |
| v. | |
| RICHARD ANTHONY CARPENTER, | UNPUBLISHED OPINION |

JOHANSON, C.J. — Richard Anthony Carpenter appeals his jury convictions for first degree robbery, theft of a motor vehicle, and second degree possession of stolen property. He argues that the trial court violated his (1) public trial rights when it permitted the parties to exercise their peremptory challenges in writing, (2) right to counsel when it denied his motion to substitute counsel without an adequate inquiry, and (3) constitutional rights when it improperly influenced him not to testify.[1] Carpenter also filed a statement of additional grounds (SAG) in which, for the first time, he generally appeals for an early release.

---

[1] This case is linked for appeal with No. 44562-0-II and the first two arguments in this appeal are identical to the two arguments in that appeal. Therefore, the language of the two opinions is similar.

No. 44569-7-II

We hold that the trial court did not (1) violate Carpenter's public trial right regarding peremptory juror challenges because those challenges do not implicate the public trial right, (2) violate Carpenter's Sixth Amendment right to counsel because Carpenter's reasons for substituting counsel were clear from the record, a formal inquiry was not necessary, and it was reasonable for the trial court to find that there was not an irreconcilable conflict or complete breakdown in communication, and (3) improperly influence his decision not to testify. We also decline to address Carpenter's SAG because it fails to identify any erroneous decisions or proceedings below. Accordingly, we affirm Carpenter's convictions.

FACTS

In December 2011, Carpenter jumped into Jane Preszler's car and drove away with her purse inside, striking Preszler with the driver's side door as he left. Later that day, the police found Preszler's car and arrested Carpenter.

The State charged Carpenter with first degree robbery,[2] theft of a motor vehicle,[3] second degree possession of stolen property,[4] and first degree driving while license suspended or revoked (DWLS).[5]

On May 11, 2012, during a pretrial status hearing, Carpenter's counsel expressed concerns about Carpenter's competency. Although two mental health evaluators had found Carpenter to be

---

[2] RCW 9A.56.200.

[3] RCW 9A.56.065.

[4] RCW 9A.56.160.

[5] RCW 46.20.342(1)(a).

2

competent, his counsel sought a new evaluation because they were unable to communicate. Because Carpenter refused to cooperate with his counsel and the mental health evaluators, it took three visits before the second evaluation was accomplished. The court ordered the third evaluation.

The trial court also asked Carpenter's counsel about his difficulties communicating with Carpenter. Carpenter's counsel explained that, in his opinion, Carpenter's position was that "he should go home now and that if [Carpenter's counsel] can't do that, [he is] not doing anything for him." Report of Proceedings (RP) (May 11, 2012) at 1. Carpenter responded that "[w]e don't have a, we don't have a relationship, Judge. We cannot conversate [sic] with each other." RP (May 11, 2012) at 5. Carpenter asked for a new attorney and the trial court told him to put his motion for substitution of counsel in writing so that the court could consider it and the State could respond.

On May 18, 2012, at a second competency status hearing, the trial court learned that although Carpenter was willing to talk with the new evaluator, he was willing to discuss only topics that were "acceptable" to him and refused to talk about his case. Due to Carpenter's failure to cooperate during the evaluation, the evaluator could not determine the cause of his inability to work with his counsel. Carpenter's counsel also told the court that Carpenter had been involved in two jail incidents in the 24 hours preceding the hearing, including an incident where he spat on a corrections officer. Seven corrections officers were needed to escort Carpenter to court, and because of his behavior, Carpenter had been charged with six counts of custodial assault. Lieutenant James, a corrections officer, stated that he thought Carpenter might have "some mental health issues" and that the mental health supervisor at the jail thought Carpenter probably had a mood disorder. RP (May 18, 2012) at 12. Lieutenant James also observed, however, that

3

Carpenter was willing to cooperate at times and usually "understood what was going on." RP (May 18, 2012) at 13.

The trial court found Carpenter to be competent and asked him why he had not submitted a written motion for new counsel. When Carpenter informed the court that he was not allowed to have a pencil or paper to prepare the motion, the court decided that "at this point I'm not going to allow Mr. Carpenter to discharge Mr. DePan. I think this is just partly his way of trying to manipulate getting what he wants." RP (May 18, 2012) at 14-15. After the May 18 hearing, the issue of substitution of counsel was not raised again although trial occurred over seven and a half months later.

In January 2013, the trial court conducted voir dire in open court, and Carpenter and the State questioned the venire and exercised their for-cause challenges. The State and Carpenter then exercised their peremptory challenges on a written form that was later filed with the clerk.[6] Based on that written form, the trial court announced which jurors had been selected and excused the others.

Before the State called its final witness, Carpenter told the trial court that he planned to testify. The court gave Carpenter's counsel time to discuss with Carpenter the possible consequences of his decision to testify, and despite his counsel's recommendation against it, Carpenter reiterated his intention to testify.

After the State rested its case, the trial court again advised Carpenter of the possible consequences of his decision to testify. In addition, the court took a short recess to permit

---

[6] This process appears in the record as "(Pause.)" RP (Jury Voir Dire) (Jan. 8-9, 2013) at 126.

4

Carpenter to discuss his decision about whether to testify with counsel and his stepfather, and after the recess, the trial court asked Carpenter,

> THE COURT: You are waiving your right to testify?
> THE DEFENDANT: I can't.
> THE COURT: Sir, yes or no? Are you waiving --
> THE DEFENDANT: I can't.
> THE COURT: Counsel, he's not specifically waiving it in answer to the Court's question.

RP (Jan. 16, 2013) at 338. The colloquy continues this way for some time before ending thus:

> THE COURT: Okay. At this point --
> MR. JOHNSON: But why don't you just say yes or no?
> THE DEFENDANT: No.
> THE COURT: No, you don't want to testify?
> THE DEFENDANT: That's my answer.
> THE COURT: All right. I think that constitutes a waiver.

RP (Jan. 16, 2013) at 341.

The State dismissed the DWLS charge and the jury convicted Carpenter on the three other counts. He now appeals those convictions.

## ANALYSIS

### I. PEREMPTORY CHALLENGES DO NOT IMPLICATE THE PUBLIC TRIAL RIGHT

Carpenter argues that the trial court violated his public trial rights when the parties exercised their peremptory challenges in writing. We held in *State v. Dunn*, 180 Wn. App. 570, 575, 321 P.3d 1283 (2014), *review denied*, No. 90238-1 (Wash. Jan. 7, 2015), and again in *State v. Marks*, ___ Wn. App. ___, 339 P.3d 196, 200 (2014), that exercising peremptory challenges does not implicate the public trial right. Accordingly, we hold that the trial court did not violate Carpenter's public trial rights by allowing counsel to make peremptory challenges at a sidebar conference.

## II. SUBSTITUTION OF COUNSEL

Carpenter next argues that the trial court violated his Sixth Amendment rights when it denied his motion to substitute counsel because it failed to conduct an adequate inquiry. We hold that the trial court did not abuse its discretion when it denied Carpenter's request for substitute counsel because Carpenter's reasons for substituting counsel were clear from the record, a formal inquiry was not necessary, and it was reasonable for the trial court to find that there was not an irreconcilable conflict or complete breakdown in communication.

### A. STANDARD OF REVIEW AND RULES OF LAW

We review a trial court's decision not to appoint new counsel for an abuse of discretion. *State v. Varga*, 151 Wn.2d 179, 200, 86 P.3d 139 (2004). A trial court abuses its discretion when its decision is "'manifestly unreasonable or based upon untenable grounds or reasons.'" *State v. Garcia*, 179 Wn.2d 828, 844, 318 P.3d 266 (2014) (internal quotation marks omitted) (quoting *State v. Lamb*, 175 Wn.2d 121, 127, 285 P.3d 27 (2012)). Criminal defendants are generally guaranteed the right to counsel. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22. A defendant, however, does not have an absolute right "'to choose any particular advocate.'" *Varga*, 151 Wn.2d at 200 (quoting *State v. Stenson*, 132 Wn.2d 668, 733, 940 P.2d 1239 (1997), *cert. denied*, 523 U.S. 1008 (1998)).

In order to justify substitution of counsel, the defendant must show good cause for the substitution, such as "'a conflict of interest, an irreconcilable conflict, or a complete breakdown in communication.'" *Varga*, 151 Wn.2d at 200 (quoting *Stenson*, 132 Wn.2d at 734). A substitution of counsel may be justified when the attorney-client relationship is plagued by things that suggest that the attorney cannot provide diligent representation. *In re Pers. Restraint of Stenson*, 142

Wn.2d 710, 724-31, 16 P.3d 1 (2001). However, a defendant must show more than a general loss of trust or confidence. *State v. Schaller*, 143 Wn. App. 258, 268, 177 P.3d 1139 (2007), *review denied*, 164 Wn.2d 1015 (2008). The cause of the breakdown in communication matters as well, and Carpenter must show that the breakdown is not because of his own refusal to cooperate. *Schaller*, 143 Wn. App. at 271.

Where the representation was inadequate, this court will presume prejudice. *Schaller*, 143 Wn. App. at 270. If his counsel's representation was adequate, however, Carpenter must demonstrate prejudice. *Schaller*, 143 Wn. App. at 270. To determine whether the breakdown in communication entitled Carpenter to new counsel, we examine three factors: (1) the extent of the conflict, (2) the adequacy of the trial court's inquiry into the conflict, and (3) the timeliness of the motion for substitution of counsel. *State v. Cross*, 156 Wn.2d 580, 607, 132 P.3d 80, *cert. denied*, 549 U.S. 1022 (2006).

## B. ANALYSIS

### 1. EXTENT OF THE CONFLICT

We must first consider the extent and nature of the breakdown in communication and what effect, if any, the breakdown had on the representation that Carpenter received. *State v. Thompson*, 169 Wn. App. 436, 457, 290 P.3d 996 (2012), *review denied*, 176 Wn.2d 1023 (2013); *Schaller*, 143 Wn. App. at 270. Carpenter does not argue that his counsel had a conflict of interest and fails to demonstrate an irreconcilable conflict or a complete breakdown in communication for three reasons.

First, the record suggests that the reason for the breakdown in communication was Carpenter's own refusal to cooperate and not his counsel's ill will or failure to engage or to try to

communicate. The record shows that Carpenter refused to communicate with his counsel about his case, was only willing to engage with the mental health evaluator about topics that were "acceptable" to Carpenter and not about the charges pending against him, and that Carpenter did not cooperate with the guards at the jail. In fact, because Carpenter refused to cooperate with corrections officers, seven officers were needed to escort him to court. Carpenter, therefore, did not only struggle to communicate with his own counsel but was generally uncooperative and struggled to communicate with everyone. Carpenter, however, is not entitled to new counsel simply because he refused to cooperate. *Thompson*, 169 Wn. App. at 457-58 ("'It is well settled that a defendant is not entitled to demand a reassignment of counsel on the basis of a breakdown in communications where he simply refuses to cooperate with his attorneys.'" (quoting *Schaller*, 143 Wn. App. at 271)).

Second, during the May 11 and May 18, 2012 hearings, Carpenter's counsel thought that Carpenter's failure to communicate might have been due, in part, to a competency problem. This fact suggests that the nature of his failure to communicate was not a deep-seated, irreconcilable conflict with counsel but latent mental health problems. Carpenter's counsel sought a new evaluation and different medication to identify and to remedy these problems so that he could provide more effective representation. The nature of the conflict between Carpenter and his counsel is, therefore, at best, the result of Carpenter's mental health problems and, at worst, due to Carpenter's general intransigence. Neither fact suggests that Carpenter and his counsel had a complete breakdown in communication that prevented diligent, adequate representation.

Finally, there was no evidence at the time of Carpenter's motion that this problem prevented his counsel from providing adequate representation, and Carpenter does not argue that

8

his counsel's continued representation prejudiced him. Carpenter's counsel agreed that he had "not been able to converse with Mr. Carpenter regarding the facts of this case, . . . his ability to work with his attorney is zero, and I have no ability to unless Mr. Carpenter's behavior changes." RP (May 18, 2012) at 5-6. But he continued to represent Carpenter diligently. The record from just the May 11 and May 18 hearings shows that Carpenter's counsel made multiple attempts to visit him to try to work on their case. Carpenter's counsel sought an additional mental health evaluation and different medications to try to address their communication problem.

Carpenter does not argue that his representation was inadequate, only that there was a breakdown in communication and the trial court's inquiry was inadequate to determine the extent of the breakdown. He fails to address the facts in the record, does not claim that they demonstrate that any alleged breakdown in communication caused deficient representation, and did not renew his motion for new counsel in the more than seven and a half months between his first motion and the start of trial.

The nature and extent of the alleged conflict does not weigh in favor of substitution of counsel because Carpenter failed to demonstrate that there was a breakdown in communication that affected his representation.

2.    ADEQUACY OF THE TRIAL COURT'S INQUIRY

Carpenter argues that the trial court conducted no inquiry at all into the nature and extent of his conflict with his attorney. We conclude that the record here provided sufficient information for the trial court to determine the nature and extent of the conflict.

An adequate inquiry includes a "full airing of the concerns" and a "meaningful inquiry by the trial court." *Cross*, 156 Wn.2d at 610. However, a "[f]ormal inquiry is not always essential

where the defendant otherwise states his reasons for dissatisfaction on the record." *Schaller*, 143 Wn. App. at 272.

Here, the trial court did not extensively inquire into Carpenter's reasons for wanting new counsel, but the reasons Carpenter sought new counsel were clear from the record. As Carpenter stated, he and his counsel did not "have a relationship" and were struggling to communicate about his case. RP (May 11, 2012) at 5. Carpenter's counsel agreed with Carpenter's characterization of their relationship but continued to try to work with Carpenter and with the court so that he could provide effective representation. From the record of the May 11 and May 18 hearings, the trial court was also aware of Carpenter's many struggles to cooperate with his mental health evaluators and corrections officers as well as his own counsel.

The nature and extent of Carpenter's conflict with his counsel was evident, and the trial court did not abuse its discretion when it did not conduct additional, formal inquiry into the conflict.

3.    TIMELINESS OF THE MOTION

Carpenter argues that the trial court did not consider timeliness as a factor when it denied his motion to substitute counsel and that, regardless, timeliness was not an issue because at the time of his motion, no trial date had been set.

An untimely motion to substitute counsel weighs against a defendant's attempt to establish that an irreconcilable conflict existed. *Stenson*, 142 Wn.2d at 732. In this case, Carpenter asked the court for a new attorney on May 11, 2012, and the court denied his request on May 18. Carpenter's first trial did not begin until January 9, 2013, more than seven and a half months later.

Timeliness, therefore, weighs in favor of Carpenter's argument that the trial court erred when it denied his motion.

### 4. SUMMARY

The extent of Carpenter's conflict with his counsel was substantial but not irreconcilable. The nature of their conflict was, at best, because of Carpenter's mental health problems and, at worst, because Carpenter simply refused to cooperate with everyone and this conflict did not prevent Carpenter's counsel from providing adequate representation. The nature and extent of their conflict was clear from the record and from Carpenter's own statements.

The trial court denied Carpenter's motion on May 18 because it found that the motion was intended to "manipulate getting what he wants," presumably to manipulate the trial process. RP (May 18, 2012) at 15. The trial court did not find a complete breakdown in communication or an irreconcilable conflict and, based on the May 11 and May 18 hearings, these determinations were not an abuse of discretion.

The trial court did not abuse its discretion when it denied Carpenter's request for new counsel because (1) Carpenter's reasons for substituting counsel were clear from the record, (2) a formal inquiry was not necessary, and (3) it was reasonable for the trial court to find that there was not an irreconcilable conflict or complete breakdown in communication. Accordingly, Carpenter's argument fails.

### III. VOLUNTARY WAIVER OF THE RIGHT TO TESTIFY

Carpenter argues that the trial court violated his constitutional rights when it improperly influenced his decision not to testify. We conclude that the trial court merely informed Carpenter

of the possible consequences of testifying to determine whether his decision was knowing, intelligent, and voluntary and, therefore, did not improperly influence his decision not to testify.

A. STANDARD OF REVIEW AND RULES OF LAW

We review the validity of a defendant's waiver of a constitutional right de novo. *State v. Stone*, 165 Wn. App. 796, 815, 268 P.3d 226 (2012) (citing *State v. Robinson*, 171 Wn.2d 292, 301, 253 P.3d 84 (2011)). A defendant's constitutional right to testify is a "fundamental" right that, like any other fundamental right, may be waived if the waiver is knowing, intelligent, and voluntary. *State v. Thomas*, 128 Wn.2d 553, 558, 910 P.2d 475 (1996). The trial court's decision to discuss a defendant's right to testify "might have the undesirable effect of influencing the defendant's decision not to testify." *Thomas*, 128 Wn.2d at 560 (citing *In re Pers. Restraint of Lord*, 123 Wn.2d 296, 317, 868 P.2d 835, *cert. denied*, 513 U.S. 849 (1994)). This is, essentially, Carpenter's claim here—that by informing Carpenter of the possible consequences of a decision to testify, the trial court improperly influenced him to decide not to testify.

Our Supreme Court has cited *United States v. Goodwin*, 770 F.2d 631 (7th Cir. 1985), *cert. denied*, 474 U.S. 1084 (1986), as support for the proposition that a trial court's discussion with a defendant regarding his decision about whether to testify could result in improper influence. *Thomas*, 128 Wn.2d at 560; *Lord*, 123 Wn.2d at 317. In *Goodwin*, the Seventh Circuit United States Court of Appeals held that the trial judge "went too far" when he "expressed surprise at [the defendant's] decision [not to testify], explained some of the pros and cons of her taking the stand, and strongly implied that her only chance for acquittal was to testify." 770 F.2d at 637. In that case, the trial court stated that the defendant's

> "chances of . . . creating a reasonable doubt in the minds of the jury, considering the evidence that they have heard in this case, seems to me to rest almost entirely

upon your ability to persuade them that yours is in fact the truthful version of these occurrences. It is difficult to do that while standing mute."

*Goodwin*, 770 F.2d at 636. Although the trial court outlined the possible advantages of not testifying, the Seventh Circuit held that a trial judge's limited role is to make sure "the defendant understands his or her rights and [to ensure] that the defendant's final decision is made voluntarily, with no coercion or undue influence." *Goodwin*, 770 F.2d at 637.

## B. ANALYSIS

Here, unlike in *Goodwin*, the trial court's lengthy engagement with Carpenter informed him of the consequences of testifying so that Carpenter's decision to not testify was knowing, intelligent, and voluntary. The court explained the possible consequences of testifying—namely that he could be questioned about past convictions and other pending charges against him—and gave Carpenter additional time to discuss this decision with his counsel and his stepfather. Even after Carpenter had further opportunity to discuss his decision, he refused to give the court a clear answer. The court asked Carpenter repeatedly whether he planned to testify or if he was waiving that right; he responded again and again that "I can't." RP (Jan. 16, 2013) at 337. Aware of the importance of this right, the trial court refused to accept "I can't" as a waiver of Carpenter's right to testify until he gave an unequivocal answer.

In contrast with *Goodwin*, the trial court here did not express any opinion of surprise about Carpenter's initial decision to testify and did not suggest or imply that either course of action would improve his chances of acquittal. If anything, the court was careful during its final, lengthy exchange with Carpenter about his decision not to testify to make sure that his waiver was clear and voluntary. The court, therefore, appropriately advised Carpenter about the potential

13

consequences if he decided to testify but left the final decision to him and the advice about trial strategy to his attorney. *Goodwin*, 770 F.2d at 637.

Carpenter points to *Thomas* and *Lord* to support his position that the trial court's discussion of his decision was improper. However, Carpenter's reliance on these cases is misguided because they present the opposite problem from this appeal. In *Thomas* and *Lord*, the issue was whether the trial court, when it failed to make any inquiry at all, had improperly failed to determine whether the defendant's waiver of his constitutional right to testify was valid. *Thomas*, 128 Wn.2d at 556-60; *Lord*, 123 Wn.2d at 316-17. In contrast, Carpenter's argument here is that the trial court was too vigorous in determining whether his decision to testify was knowing, intelligent, and voluntary.

We hold that the trial court merely informed Carpenter of the possible consequences of testifying to determine whether his decision was knowing, intelligent, and voluntary and, therefore, did not improperly influence his decision not to testify.

## IV. STATEMENT OF ADDITIONAL GROUNDS

Finally, Carpenter requests "an early release date." SAG at 1. Although the Rules of Appellate Procedure do not require citations to the record or to legal authorities, we will not review a defendant's SAG "if it does not inform the court of the nature and occurrence of alleged errors." RAP 10.10(c). We also generally decline to review issues that are raised for the first time on appeal unless it is a "manifest error affecting a constitutional right." RAP 2.5(a)(3). An error is "manifest" where there is actual prejudice demonstrated by "'practical and identifiable consequences in the trial of the case.'" *State v. Kirkman*, 159 Wn.2d 918, 935, 155 P.3d 125 (2007) (internal quotation marks omitted) (quoting *State v. WWJ Corp.*, 138 Wn.2d 595, 603, 980 P.2d 1257 (1999)).

No. 44569-7-II

Here Carpenter's SAG states, "I would like to make an appeal for an early release date. An earlier release date than whats [sic] on record." SAG at 1. This brief statement does not give us any basis to determine what, if any, decisions or proceedings below were erroneous. Accordingly, we decline to address Carpenter's SAG.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Johanson, C.J.
JOHANSON, C.J.

We concur:

Maxa, J.
MAXA, J.

Sutton, J.
SUTTON, J.

15